UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))
No. 94-20639
)))))))))))))))))))))))

W. DOUGLAS WILLIAMS,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

)))))))))))))))))))))))))))))))))))))))))))))))))))))
Appeal from the United States District Court
for the Southern District of Texas
)))))))))))))))))))))))))))))))))))))))))))))))))))))

December 13, 1995

Before SMITH, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

On this third appeal in this case, Plaintiff-Appellant W. Douglas Williams ("Williams") appeals the district court's order granting the motion of the United States to substitute itself as defendant in place of Congressman Jack Brooks ("Brooks") pursuant to the Westfall Act, 28 U.S.C. § 2679(d), and the court's dismissal for failure to state a claim upon which relief may be granted. Finding that as a matter of law Brooks was acting within the scope of his employment for purposes of the Westfall Act at the time he allegedly made defamatory statements against Williams during a television interview, we affirm.

## I. BACKGROUND

On February 22, 1988, Williams and his political consulting firm, Texas Dynamics, Inc., filed suit in Texas state court against Brooks, alleging that Brooks defamed them during a press interview on February 24, 1987 in Brooks's Washington, D.C. office, by a Houston, Texas television station, concerning the status of an appropriations bill to restore the Battleship Texas.[1] Brooks removed the action to federal court and invoked the defense of official immunity.

On March 16, 1990, the district court denied Brooks's motion to dismiss based on official immunity. Brooks filed an interlocutory appeal to this Court, and we affirmed the denial of Brooks's motion to dismiss.[2] While the appeal was still pending, the district court dismissed the case for failure of the parties to file a joint pretrial order. We reversed the dismissal, holding that the district court was divested of jurisdiction during pendency of Brooks's interlocutory appeal, and remanded for further proceedings.[3]

Following the second remand, a designated official of the U.S. Department of Justice, acting on behalf of the Attorney General,

---

[1] Williams and his firm contracted with the Battleship Texas Advisory Board to raise money for the restoration, and lobbied for an appropriation slightly in excess of five million dollars.

[2] *Williams v. Brooks*, 945 F.2d 1322 (5th Cir. 1991), *cert. denied*, 504 U.S. 931, 112 S.Ct. 1996, 118 L.Ed.2d 592 (1992).

[3] *Williams v. Brooks*, 996 F.2d 728 (5th Cir. 1993).

certified that Brooks was acting within the scope of his employment in accordance with the Westfall Act, 28 U.S.C. § 2679(d)[4], at the time of the alleged events forming the basis of the defamation suit.  Brooks then filed a motion with the district court to substitute the United States as sole defendant under the terms of the Westfall Act, and to proceed in accordance with the terms of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  The United States also moved to dismiss on the ground that under the FTCA no action may lie against the United States for defamation.

The district court granted both the motion to substitute and the motion to dismiss.  Relying on Third Circuit caselaw, the district court found certification to be *prima facie* evidence that Brooks's challenged conduct was within the scope of his employment, and thus, the burden shifted to Williams to come forward with specific facts to rebut the certification.  After reviewing the submissions on file with the court, the district court concluded that Williams failed to meet his burden.

## II.  FEDERAL EMPLOYEE UNDER THE WESTFALL ACT

---

[4]  Section 2679(d)(2) provides in pertinent part:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action...shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Williams suggests that Brooks, as a Member of Congress, is not an "employee of the government" under the FTCA. This argument raises a question of statutory interpretation requiring *de novo* review on which neither party bears the burden of proof. *See Sullivan v. United States*, 21 F.3d 198, 201 n. 6 (7th Cir.), *cert. denied*, ___U.S.___, 115 S.Ct. 670, 130 L.Ed.2d 604 (1994).

The FTCA defines an "employee of the government" to include "officers or employees of any federal agency...and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. Prior to the Westfall Act amendments to the FTCA, the term "federal agency" only encompassed the Executive Branch of the federal government. However, in 1988, Congress extended coverage under the FTCA to officers and employees of the legislative and judicial branches. *See* Westfall Act, Pub.L. No. 100-694, § 3, 102 Stat. 4563, 4564 (1988); *see also* H.R.Rep. No. 100-700, 100th Cong., 2d Sess. 5, *reprinted in* 1988 U.S.C.C.A.N. 5945, 5948 ("Section 3 of H.R. 4612 explicitly extends the coverage of the FTCA to officers and employees of the legislative and judicial branches. The FTCA currently covers employees of the Executive Branch only."). A Member of Congress who holds an office in the U.S. House of Representatives is clearly an employee or officer of the legislative branch of the federal government. The plain language of the statute thus suggests that Members of Congress are employees of the government, for "[s]ection 2679(b)(1) applies without

4

exception to 'any employee of the Government,' and section 2671, as amended by the Westfall Act, provides that officers and employees of the [legislative branch] are encompassed within that phrase." *Sullivan*, 21 F.3d at 202. If Congress intended to exclude Members of Congress from the protection of the FTCA, it could have expressly done so within the language of the Act. Therefore, we find that as an employee of the government as defined under the FTCA, Brooks is eligible for coverage if his conduct at issue was within the scope of his employment.

### III. SCOPE OF EMPLOYMENT

#### A.

In our recent decision in *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995) (*en banc*), we held that the Attorney General's certification of scope of employment under the Westfall Act is subject to judicial review. Furthermore, we concluded that the court's *de novo* review of whether a federal employee was acting within the scope of his employment under the Act requires the application of the law of the state in which the employee's conduct occurred. *Id.* The question that remains unanswered after our decision in *Garcia* is which party bears the burden of proof.

Only two circuits have held that the Attorney General's certification constitutes conclusive evidence that the defendant-employee was acting within the scope of his employment.[5] Four circuits, the D.C., Third, Sixth and Eighth, weigh the Attorney

---

[5] *Johnson v. Carter*, 983 F.2d 1316 (4th Cir.), *cert. denied*, ___U.S.___, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993); *Aviles v. Lutz*, 887 F.2d 1046 (10th Cir. 1989).

General's certification as *prima facie* evidence that the employee's challenged conduct was within the scope of his employment.[6] "Therefore, 'the burden of altering the status quo' is on the plaintiff, who must come forward with specific facts rebutting the government's scope-of-employment certification." *Brown*, 949 F.2d at 1012 (internal quotations omitted).

The Ninth, Seventh, Eleventh and First Circuits place the burden on the plaintiff to establish that the employee's conduct exceeded his scope of employment without deferring to the Attorney General's certification as *prima facie* evidence.[7] In *S.J. & W. Ranch*, the Eleventh Circuit concludes that the Attorney General's scope certification does not warrant judicial deference based on: 1) the interpretation that removal and substitution determinations under the Act are separate and distinct from scope of employment; 2) the concern that giving a conclusive effect for purposes of substitution would enhance the power of the executive branch to dictate the judicial branch's subject matter jurisdiction, thereby raising separation of power issues; 3) the view that the Attorney General does not possess expertise in determining an employee's

---

[6] *Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C. Cir. 1994), *cert. denied*, ___U.S.___, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995); *Melo v. Hafer*, 13 F.3d 736, 747 (3d Cir. 1994); *Arbour v. Jenkins*, No. 91-2299, 1993 WL 342872, at *2 (6th Cir. Sept. 8, 1993) (per curiam); *Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991).

[7] *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 744-45 (9th Cir. 1991); *Hamrick v. Franklin*, 931 F.2d 1209, 1211 (7th Cir.), *cert. denied*, 502 U.S. 869, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990), *modified*, 924 F.2d 1555 (11th Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991); *Nasuti v. Scannell*, 906 F.2d 802, 813 (1st Cir. 1990).

scope of employment under the applicable state law; and 4) the concern that the highly discretionary nature of the Attorney General's certification may create a high risk of abuse. *Id.*[8] For the reasons set forth in *S.J. & W. Ranch*, we agree that the plaintiff should bear the burden of proof without weighing the Attorney General's certification as *prima facie* evidence of scope of employment, and we adopt the placement of the burden of proof on the plaintiff to show that the defendant's conduct was not within the scope of his or her employment as applied by the Ninth, Seventh, Eleventh and First Circuits.

B.

Texas law controls in this case with regard to the determination of whether Brooks was acting within the scope of his employment under the Westfall Act, even though the interview at issue took place in Washington, D.C. "Texas has adopted the most-significant-relationship test for determining which state's law applies to a tort action." *Levine v. CMP Publications, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984) (citing *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979)). As in *Levine*, Texas is the state where Williams is domiciled, and where his firm is located. *See id. See also Restatement (Second) of Conflicts*, § 150(2). In addition, the broadcasting of the television interview took place in Houston, Texas. Thus, the alleged defamation of Williams and any resulting harm essentially took place in the State of Texas.

---

[8] *See also Meridian Int'l Logistics, Inc.*, 939 F.2d at 744; *Nasuti*, 906 F.2d at 812-13.

Under Texas law, determination of scope of employment is applied under the theory of *respondeat superior*; "employers may be held liable for negligent acts by their employees under a theory of respondeat superior only if the employee's actions are in the course and scope of their employment." *Mata v. Andrews Transport, Inc.*, 900 S.W.2d 363, 366 (Tex. App.--Houston 1995).[9] To find that the employee acted within the scope of employment, the action of the employee must be:

> (1) within the general authority given him;
> (2) in furtherance of the employer's business; and
> (3) for the accomplishment of the object for which the employee was employed.

*Id.* (citing *Drooker v. Saeilo Motors*, 756 S.W.2d 394, 397 (Tex. App.--Houston 1988, writ denied)). "To be within the scope of employment, 'the conduct must be of the same general nature as that authorized or incidental to the conduct authorized.'" *Kelly v. Stone*, 898 S.W.2d 924, 927 (Tex. App.--Eastland 1995, writ requested) (quoting *Smith v. M System Food Stores, Inc.*, 297 S.W.2d 112, 114 (Tex. 1957)). Defamation is defined under Texas law as an intentional tort. *See City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.--Houston 1995). An employee's intentional tort is

---

[9] Williams asserts that Texas law distinguishes scope of office from scope of employment. The cases he cites predate the enactment of the Texas Tort Claims Act. *See Southern Surety Co. v. Hidalgo County*, 83 S.W.2d 313 (Tex. 1935); *Brown v. Sneed*, 14 S.W. 248 (Tex. 1890). We find that no such distinction between scope of office and scope of employment under Texas law. After the enactment of the Texas Tort Claims Act, liability of a state governmental unit was determined by whether the employee was acting within his scope of employment, not by duties defined by state statute. Accordingly, we apply scope of employment under the Texas theory of *respondeat superior*.

8

imputed to the employer under the doctrine of *respondeat superior* when committed in the scope of employment. *Houston Transit Co. v. Felder*, 208 S.W.2d 880, 881 (Tex. 1948) (citing *Gulf, C. & S. F. Ry. Co. v. Cobb*, 45 S.W.2d 323, 325 (Tex. Civ. App. 1931, writ dism'd)).[10]

Williams concedes that Members of Congress traditionally communicate to the public about issues of law, often expressing their concerns and opinions about the need to change the laws. Indeed, the legislative duties of Members of Congress are not confined to those directly mentioned by statute or the Constitution. Besides participating in debates and voting on the Congressional floor, a primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents. Such service necessarily includes informing constituents and the public at large of issues being considered by Congress. It is unnecessary to the resolution of the case at bar to present an exhaustive list of the duties of Members of Congress or those activities that would or would not fall within a purview

---

[10] Indeed, an employee's willful and malicious actions made in the scope of his employment, or any acts which are so connected with and immediately grow out of another act of the employee imputable to the employer, are imputed to the employer unless the employee's actions involve serious criminal activity. *Cobb*, 45 S.W.2d at 325; *Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773, 777-78 (Tex. App.--Texarakana 1995, writ denied). Under the exception, an employer is not liable for the employee's intentional or malicious actions that are unforeseeable considering the employee's duties. *Id.* (citing *Adami v. Dobie*, 440 S.W.2d 330, 334 (Tex. Civ. App.--San Antonio 1969, writ dism'd); 1 J. HADLEY EDGAR & JAMES B. SALES, TEXAS TORTS & REMEDIES § 4.02(2)[f] (1994)). Thus, even criminal acts can be in the course and scope and impute liability if the acts are foreseeable considering the employee's duties.

of activities taken in the course and scope of one's position as a Member of Congress. In the instant case we are not hesitant to find that as a matter of law Brooks's statements, including the alleged defamatory remarks and even assuming such remarks are defamatory, were made in the context of an interview addressing Congress' appropriation of money including Williams's lobbying fees for the restoration of the Battleship Texas, clearly fell within the course and scope of his position as a Member of Congress. This is especially true in the case of Congressman Brooks who was Chairman of the House Appropriations Committee at the time of the alleged defamation incident.

## IV. CONCLUSION

For the reasons articulated above, the district court's order granting the substitution of the United States as party defendant and dismissing the case for failure to state a claim upon which relief may be granted is AFFIRMED.