IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50482
_____


HARLAN D. VANDER ZEE,

                                        Plaintiff-Appellant,

        versus

JANET RENO; ROBERT E. RUBIN; STONE
OAK BANKSHARES INC.; STONE OAK
NATIONAL BANK; FIDELITY AND DEPOSIT
COMPANY OF MARYLAND; EUGENE LUDWIG,
Comptroller of the Currency of the
United States,

                                        Defendants,

        and

RONALD F. EDERER, U.S. ATTORNEY;
JACK C. FRELS; ROBERT S. MULLER, III;
JOAN EARP; JESSE WONG; JEFF DOWDY;
JOE FLORIO; UNITED STATES OF AMERICA,

                                        Defendants-Appellees.


_____

Appeal from the United States District Court for the
Western District of Texas
(A-94-CV-469)
_____

October 4, 1996
Before GARWOOD, DAVIS and DeMOSS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

_____

[*]     Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Plaintiff-Appellant Harlan D. Vander Zee (Vander Zee) appeals the dismissal of his claims brought against the United States under the Federal Tort Claims Act (FTCA) and against several individual federal defendants under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 91 S.Ct. 1999 (1971). We affirm.

**Facts and Proceedings Below**

Between 1986 and 1991, Vander Zee served as executive vice-president of Stone Oak National Bank in San Antonio, Texas. During this period, he became aware of large cash deposits being made by Mario Alberto Salinas-Trevino (Salinas) and his associates. By all indications, Vander Zee properly reported these transactions to federal authorities as required by law. In March 1989, Salinas was indicted and arrested on drug trafficking charges, although he later escaped from custody.

Vander Zee alleges that following Salinas' escape Assistant United States Attorney Jack C. Frels (Frels) threatened Vander Zee with indictment for money laundering unless he would falsely testify that he and other Stone Oak officers were aware that the funds deposited by Salinas were drug proceeds. Vander Zee and Stone Oak's president, Herbert E. Pounds, Jr. (Pounds), were subsequently indicted by a federal grand jury on money laundering charges, although they were ultimately acquitted by the trial court at the close of the government's case-in-chief. Following Vander Zee's indictment, Vander Zee's resignation was requested by Stone

Oak's Board of Directors. Vander Zee alleges that "Jack C. Frels, Joseph Florio and unknown persons at justice [sic] in Washington calling the shots caused someone at the OCC [Office of the Comptroller of the Currency], on information and belief Wong or Earp to orally demand that the bank fire Vander Zee," and that "Mr. Schumann, President of the Bank, duly reported to the Board of Directors the demand by the Department of Justice (conveyed by OCC), that either Vander Zee would be fired or the bank would be closed." Vander Zee resigned from his position at Stone Oak on May 22, 1990.

After the conclusion of the criminal proceedings against Vander Zee, the government continued to pursue a civil forfeiture action against assets seized at the time of Salinas' arrest. Salinas' interest in these assets was forfeited. Stone Oak, which had a lien on the assets securing loans it had made, and the United States were the sole remaining litigants. Stone Oak eventually reached a settlement agreement with the United States allowing Stone Oak to retain these assets to recapitalize the bank. In addition, an addendum to the settlement agreement provided that Stone Oak would neither rehire Vander Zee nor pay attorneys' fees or provide other financial assistance "unless the Bank becomes legally obligated to do so." The settlement agreement and addendum were expressly made contingent upon approval by the United States District Court in which the forfeiture action was pending, which approval was subsequently obtained, and an order accepting the

3

settlement was entered by the district court on August 14, 1992.

On August 13, 1993, Vander Zee filed suit against the United States and several former government officials in their individual capacities, including former Assistant Attorney General Robert S. Mueller, III (Mueller), former United States Attorney Ronald Ederer (Ederer), and former Assistant United States Attorney Jack C. Frels, as well as against private defendants Stone Oak, Stone Oak Bankshares, Inc., and Fidelity & Deposit Company of Maryland. The United States and the former government officials sued in their individual capacities filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). These motions were granted by the district court. The district court held, *inter alia*, that Vander Zee's *Bivens* claims against the individual defendants should be dismissed because Vander Zee failed to allege the violation of any constitutionally protected interest, or, alternatively, because the individual defendants were entitled to qualified immunity because the interests allegedly infringed were not "clearly established." These claims were subsequently severed from the original action, and a final judgment for the defendants was entered on August 26, 1994. Appeal was taken to this Court, which affirmed the judgment of the district court. *Vander Zee v. Reno* (*Vander Zee I*), 73 F.3d 1365 (5th Cir. 1996).

The present action (*Vander Zee II*) was filed in the United States District Court for the Western District of Texas, Austin

4

Division, on July 1, 1994. Vander Zee has attempted to assert state law tort claims against the United States under the Federal Tort Claims Act (FTCA) and against the individual defendants for false arrest, false imprisonment, malicious prosecution, abuse of process, intentional and/or negligent infliction of emotional distress, defamation, civil conspiracy, and interference with contract rights relating to Vander Zee's purportedly coerced resignation from Stone Oak, his arrest and prosecution, and harms allegedly caused by the terms of the settlement agreement and addendum entered into between Stone Oak and the government. Vander Zee also asserts *Bivens* claims against several government attorneys including Ederer, Frels, Mueller, and Joseph Florio (Florio), against FBI agent Jeff Dowdy (Dowdy), and against employees of the Office of the Comptroller of the Currency (OCC) Joan Earp (Earp) and Jesse Wong (Wong) for their actions relating to these events.

Motions to dismiss were filed on behalf of the United States and the individual federal defendants, which were granted by the district court by order entered April 25, 1995. The district court first held that the United States was properly substituted for the individual defendants with respect to Vander Zee's state law claims pursuant to a notice of substitution filed by the United States as provided under the Westfall Act, 28 U.S.C. § 2679. The district court then held that all claims against the United States must be dismissed for want of subject matter jurisdiction as Vander Zee's

state law claims all fell within the exceptions to the FTCA's general waiver of sovereign immunity as provided at 28 U.S.C. § 2680(h). Alternatively, the district court held that Vander Zee's claims were barred by the FTCA's discretionary function exception as provided at 28 U.S.C. § 2680(a). With respect to the remaining *Bivens* claims against the individual defendants, the district court held that Vander Zee's claims were barred by the applicable statute of limitations, that Vander Zee's claims pertaining to the terms of the settlement agreement and addendum were barred by collateral estoppel having previously been decided in *Vander Zee I*, that defendants Mueller, Ederer, Frels, and Florio were entitled to absolute immunity from any claims related to Vander Zee's indictment and prosecution, and that the individual defendants were entitled to qualified immunity from Vander Zee's claims relating to the terms of the settlement agreement and to his allegedly coerced resignation from Stone Oak. Vander Zee now brings this appeal.

## Discussion

We review the district court's dismissal under Rule 12(b)(6) for failure to state a claim *de novo*, taking all facts properly pleaded as true and viewing them in the light most favorable to the plaintiff. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996). "Dismissal is not proper unless it appears, based solely on the pleadings, that the plaintiff can prove no set of facts in support of the claim(s) warranting relief." *Id; see also Morin v.*

6

*Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Though we take factual allegations of the complaint to be true, "we do not assume facts the plaintiffs have not alleged." *McCormack v. National Collegiate Athletic Ass'n,* 845 F.2d 1338, 1343 (5th Cir. 1988). The district court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is similarly subject to *de novo* review. *Zuspann v. Brown*, 60 F.3d 1156, 1157 (5th Cir. 1995)*, cert. denied*, 116 S.Ct. 909 (1996).

I. Claims Against the United States

    A.    Substitution of United States for Individual Defendants on State Law Claims

The Westfall Act, 28 U.S.C. § 2679, provides:

> "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. *Id*. at § 2679(d)(1).

Generally, such certification is subject to *de novo* judicial review, and the question whether the employee was acting within the scope of employment is governed by the law of the state in which the conduct at issue occurred. *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995)(*en banc*). Although we give no judicial deference to the Attorney General's findings, *Palmer v. Flaggman*, 93 F.3d 196, 198-99 (5th Cir. 1996), the plaintiff bears the burden

7

of proof to show that the employee's conduct was not within the scope of employment. *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995).

In the present case, Helene M. Goldberg, Director of the Torts Branch, Civil Division of the United States Department of Justice, certified that the individual defendants were acting within the scope of their employment with respect to the conduct alleged within Vander Zee's First Amended Complaint.[1] The court below noted that Vander Zee filed no opposition to the notice of substitution, although he had alleged in his First Amended Complaint and in response to the motion to dismiss that the individual defendants' acts were outside of the scope of their employment. The district court found based upon the pleadings that the individual defendants were acting within the scope of their employment. We agree, for the reasons set out below in our discussion of the FTCA discretionary function exception (see part

---

[1] Vander Zee suggests in his brief that the certification is invalid because it was not made by the Attorney General. However, authority to make this certification is delegated to the Director of the Torts Branch by the Assistant Attorney General in charge of the Civil Division at 28 C.F.R. 15.3, Appendix (Directive No. 90-79).

In addition, the government acknowledges that the certification erroneously cites section 2679(d)(2) which deals with certification for purposes of removal of cases brought against government employees in state court and substitution of the United States as party defendant. The proper provision is found at section 2679(d)(1), which addresses substitution following certification for cases brought in a United States district court. However, this discrepancy does not invalidate the certification nor did it cause any prejudice to Vander Zee.

8

I C, *infra*) and of the defendants' entitlement to qualified (and, in part, absolute) immunity (see part II B, *infra*). The district court's substitution of the United States for the individual defendants was correct and is affirmed. Further, the district court also held that by failing to oppose the certification Vander Zee in substance waived any challenge to it and failed to carry his burden of showing the certification was erroneous. We agree with the district court that having failed to oppose the notice of substitution Vander Zee necessarily waived any challenge to it and failed to carry his burden of showing the certification was erroneous. As Vander Zee failed to challenge the notice of substitution and certification, for this reason also the United States was properly substituted for the individual defendants with respect to Vander Zee's state law claims.

B. Section 2680(h) of the Federal Tort Claims Act

As sovereign, the United States is generally immune from suit except where it has expressly consented to be sued. *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Absent such consent, any suit brought against the United States must be dismissed for lack of subject matter jurisdiction. *Truman,* 26 F.3d at 594. However, the Federal Tort Claims Act (FTCA) waives immunity for any --

> "negligent or wrongful act or omission of any employee of
> the Government while acting within the scope of his

9

> office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."   28 U.S.C. § 1346(b).

The waiver of immunity found in the FTCA is, however, subject to several exceptions found at section 2680(h), which excludes "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."[2] These exceptions are to be strictly construed in favor of the government.  *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993); *Saraw Partnership*, 67 F.3d at 569.

We agree fully with the district court's conclusion that Vander Zee's state law claims all fall within the exceptions to the waiver of sovereign immunity contained in section 2680(h), and recapitulate this analysis only briefly here.  With respect to Vander Zee's claims for false imprisonment, false arrest, malicious

---

[2]     The exceptions to the waiver of sovereign immunity contained in section 2680(h) are inapplicable to "investigative or law enforcement officers" defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."   28 U.S.C. § 2680(h).  Vander Zee suggests in his First Amended Complaint that the United States Attorneys should be considered "law enforcement officers"  by virtue of the control which they exercised over the actions of agents of the FBI.  However, those courts that have considered the question have concluded that prosecuting attorneys are not "law enforcement officers" within the meaning of this section.  *See Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994); *Ware v. United States*, 838 F.Supp. 1561, 1563–64 (M.D. Fla. 1993); *Dirienzo v. United States*, 690 F.Supp. 1149, 1158 n.8 (D. Conn. 1988).  We agree.

prosecution, and abuse of process, these causes of action are all expressly included in section 2680(h), except for acts or omissions of "investigative or law enforcement officers." Vander Zee attempts to evade the strictures of section 2680(h) by attributing the acts that form the basis of these claims to agents of the Federal Bureau of Investigation. As the district court properly noted, Vander Zee's complaint suggests that his prosecution was the result of his unwillingness to testify against the bank as allegedly demanded by Assistant United States Attorney Frels. Therefore, Vander Zee's claims for malicious prosecution and abuse of process are premised on actions of a government agent who is not an investigative or law enforcement officer, and these claims are expressly foreclosed by the FTCA. Clearly, the United States Attorney's office was responsible for prosecuting Vander Zee, and the fact that the FBI may have assisted in the investigation does not alter this analysis. As far as the claims for false imprisonment and false arrest are concerned, Vander Zee's arrest and detention were pursuant to an indictment and therefore cannot form the basis for a claim for false imprisonment or false arrest against the FBI agents performing the arrest under Texas law. *See Pete v. Metcalfe,* 8 F.3d 214, 218-19 (5th Cir. 1993)(no action for false imprisonment for arrest pursuant to valid warrant)*; see also Campbell v. City of San Antonio*, 43 F.3d 973, 976 & 980 n.11 (5th Cir. 1995).

11

Vander Zee's complaint contains additional allegations that could be read as either claims for deprivations of constitutionally protected property rights or as state law claims for interference with contract rights and defamation relating to his allegedly coerced resignation and the subsequent settlement agreement entered into between the bank and the government. In either case, Vander Zee may not recover from the United States under the FTCA. Federal constitutional torts may not be pursued under the FTCA, *Federal Deposit Ins. Corp. V. Meyer*, 114 S.Ct. 996, 1001 (1994), while claims for interference with contract rights or defamation are specifically excepted from the FTCA's waiver of sovereign immunity by section 2680(h).

Vander Zee additionally asserts claim for either intentional or negligent infliction of emotional distress. While these claims are not specifically excepted from the FTCA's waiver of sovereign immunity under section 2680(h), our opinion in *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994), explains that "[i]f the conduct upon which a claim is based constitutes a claim 'arising out of' any one of the torts listed in section 2680(h) then federal courts have no jurisdiction to hear that claim." Plainly Vander Zee's claim arises out of his arrest and prosecution, allegedly coerced resignation from his job, and the terms of the settlement agreement, which we have already indicated must be understood to be claims for torts specifically enumerated under section 2680(h).

Finally, Vander Zee asserts a claim for civil conspiracy to deprive him of his job, his future employment prospects, and legal fee reimbursement to which he claims an entitlement. However, there is no independent liability for civil conspiracy under Texas law, but rather liability is premised upon a conspiracy to commit an underlying wrongful act. *See Banc One Capital Partners Corp. v. Knepper*, 67 F.3d 1187, 1194-95 & n.10 (5th Cir. 1995). As we have already established, Vander Zee's claims arise out of torts specifically enumerated under section 2680(h), and therefore his civil conspiracy claim may not be maintained under the FTCA.

For the foregoing reasons, we concur in the district court's conclusion that it was without subject matter jurisdiction of Vander Zee's claims against the United States, and therefore these claims were properly dismissed.

C.   Discretionary Function Exception

The district court held in the alternative that Vander Zee's claims were barred by section 2680(a) of the FTCA, often referred to as the  "discretionary function exception," which provides:

> "The provisions of this chapter and section 1346(b) of this title shall not apply to –
>      (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused*."   28 U.S.C.

13

2680(a)(emphasis added).

Whether the conduct of a government employee falls within the ambit of the discretionary function exception involves a two-part inquiry. First, "[t]he exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *United States v. Gaubert*, 111 S.Ct. 1267, 1273 (1991)(quoting *Berkovitz v. United States*, 108 S.Ct. 1954, 1958 (1988))(alteration in original). This first requirement "is not satisfied if a 'federal statute, regulation, or policy prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id*. (quoting *Berkovitz*, 108 S.Ct. at 1958-59).

If this first requirement is met, it must be determined whether the challenged action was of the type that the discretionary function is designed to shield as "the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Id.* at 1273-74 (quoting *Berkovitz*, 108 S.Ct. at 1959). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."[3] *Id*. at 1274.

---

[3] *See also ALX El Dorado, Inc. v. Southwest Savings & Loan Assn.*, 36 F.3d 409 (5th Cir. 1994)(applying *Gaubert* analysis); *McNeily v. United States*, 6 F.3d 343 (5th Cir. 1993)(same).

14

With respect to Vander Zee's allegedly coerced resignation from Stone Oak, he contends that the discretionary function exception is inapplicable because: (1) the government lacked discretion to remove him as a bank officer without following the formal procedures set forth at 12 U.S.C. § 1818; and (2) the Department of Justice lacked authority to interfere in the regulation of banking personnel.

Vander Zee's first argument is contradicted by the Supreme Court's decision in *Gaubert* in which the Court, applying a statute governing the supervisory powers of the Federal Home Loan Bank Board (FHLBB) that is analogous to § 1818, concluded:

> "Although the statutes provided only for formal proceedings, there is nothing in the language or structure of the statutes that prevented the regulators from invoking less formal means of supervision of financial institutions. Not only was there no statutory or regulatory mandate which compelled the regulators to act in a particular way, but there was no prohibition against the use of supervisory mechanisms not specifically set forth in statute or regulation."
> *Gaubert*, 111 S.Ct. at 1277.

Based upon this analysis, the Supreme Court concluded that the regulators' informal actions fell within the reach of the discretionary function exception. *Id*. at 1278. We similarly conclude that the OCC possessed discretion in its supervision of banking personnel, as Vander Zee cites us to no statute or regulation to the contrary.

Vander Zee's second argument is similarly unavailing because his First Amended Complaint does not allege that the Department of

15

Justice alone was responsible for his allegedly forced resignation from Stone Oak, but rather that the OCC demanded Vander Zee's resignation, albeit at the behest of the Department of Justice.[4] As we have just indicated, the OCC clearly possessed discretion in its regulation of banking personnel. We do not see that this result is altered by the allegation that the OCC allegedly took the action as a result of consultation with employees of the Department of Justice.

The actions of the government attorneys related to Vander Zee's indictment and prosecution are similarly protected by the discretionary function exception. *See Sutton v. United States*, 819

---

[4]     In particular, Vander Zee's First Amended Complaint alleges:

> "Within the next several days Jack C. Frels, Joseph Florio and the unknown persons at justice (sic) in Washington calling the shots caused someone at the OCC, on information and belief Wong or Earp to orally demand that the bank fire Vander Zee."

The complaint further alleges:

> "Mr. Schumann, President of the Bank, duly reported to the Board of Directors the demand by the Department of Justice (conveyed by OCC), that either Vander Zee would be fired or the bank would be closed."

Vander Zee now argues in his brief that "Even before his trial DOJ attorneys, acting without the concurrence of the OCC, took away his job..." Vander Zee apparently bases this new allegation in his brief on the testimony of bank examiner Jesse Wong obtained at the trial of Vander Zee's action against Stone Oak following the severance in *Vander Zee I*. However, this allegation was not before the district court in Vander Zee's present complaint and his motion to supplement the record on appeal has been denied.

16

F.2d 1289, 1298 (5th Cir. 1987)("absent extremely compelling circumstances, an unsuccessful prosecution must generally be determined to warrant application of the discretionary function exception"); *see also Moore v. Valder*, 65 F.3d 189, 196-97 (D.C. Cir. 1995), *petition for cert. filed*, 64 U.S.L.W. 3856 (U.S. June 7, 1996)(No. 95-2005). Nor does Vander Zee's allegation that Frels used the threat of indictment to force Vander Zee to testify against Stone Oak place his actions outside of the scope of the discretionary function exception. *See Moore,* 65 F.3d at 197 (discretionary function exception applicable to prosecutor's actions despite allegations that he "pressured witnesses into incriminating [plaintiff], concealed and distorted exculpatory evidence to create a false impression of what [plaintiff] knew about the fraud schemes and withheld material exculpatory information from him").

Finally, we agree with the district court that the actions of the United States Attorneys in settling the civil forfeiture action with Stone Oak also fall within the discretionary function exception. Negotiating the terms of a settlement agreement appears to us to be an act in which a great deal of discretion necessarily inheres, and Vander Zee has cited us to no statute, regulation, or policy setting forth a course of action for government attorneys to pursue in negotiating a settlement agreement in a civil proceeding. In particular, settling a civil forfeiture action upon which the

17

solvency of a financial institution depends would appear to be the type of policy decision that the exception is intended to protect.

II. Claims Against the Individual Defendants

The only remaining claims are *Bivens* claims against the individual defendants for alleged violations of Vander Zee's constitutional rights.

A. Collateral Estoppel

The district court held that Vander Zee's *Bivens* claims arising out of the terms of the settlement agreement were barred by collateral estoppel having been decided by the district court in *Vander Zee I*. In order for collateral estoppel to apply, the following elements must be satisfied: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine."[5] *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995).

---

[5] While some decisions issued by this Court have cited this last requirement as a general requirement for the application of collateral estoppel, *see United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994), at least one of our decisions suggests that the fairness requirement may be limited to cases involving offensive, as opposed to traditional, collateral estoppel only. *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290-91 n.11 (5th Cir. 1995). As the fairness requirement has not been raised by the parties as an obstacle to the application of collateral estoppel , nor do we perceive any such unfairness, we need not resolve this question today.

Applying this standard to the present facts, we concur in the district court's conclusion that collateral estoppel prevents Vander Zee from relitigating the issue of the individual defendants' *Bivens* liability arising out of the terms of the settlement agreement and addendum. In *Vander Zee I*, the district court dismissed Vander Zee's claims pertaining to the terms of the settlement and addendum on the ground that Vander Zee had failed to allege the invasion of a constitutionally protected interest in liberty or property. Alternatively, the district court held that the United States Attorneys were entitled to qualified immunity as the interests allegedly infringed were not "clearly established." Vander Zee's asserted liberty interest in *Vander Zee I* was in his future employment in the banking industry while his asserted property interest was in being rehired by Stone Oak and in receiving attorneys' fees to which he believed he was entitled. Vander Zee's present complaint asserts the violation of precisely these same interests, thereby satisfying the first prong of the collateral estoppel standard.[6]

---

[6]    Vander Zee's amended complaint alleges in relevant part:

> "Since May 1990 Vander Zee has been largely unemployed and essentially unemployable in the profession of his choice, at the Stone Oak National Bank, or a comparable institution."

> ....

> "Vander Zee further would show that the individual defendants, either acting alone or

19

We further conclude that the second prong of the collateral estoppel analysis is satisfied as the *Bivens* claims relating to the terms of the settlement agreement and addendum were fully briefed and argued in *Vander Zee I* in resolving the motions to dismiss. The resolution of the *Bivens* claims was clearly necessary to the judgment as the determination of these issues was central to the defendants' motions to dismiss. Finally, we perceive no unfairness under the facts of the present case in applying collateral estoppel to bar relitigation of claims that have already been fully and

> in concert, under color of federal law, engaged in constitutionally prohibited conduct in violation of ...<u>Bivens</u> by going beyond the course and scope of their duties as federal prosecutors, without good faith, and with malice, in coercing the Bank into...(2) failing to re-hire Vander Zee as promised, and (3) signing the Settlement Agreement and Addendum to the Settlement Agreement, which operated as a bar to Vander Zee's employment, forever, with the Bank and any prospective opportunities for employment in the banking industry...."

Vander Zee contends both in his initial brief and in his reply brief that collateral estoppel is inapplicable because different facts have been alleged in the present case with respect to Vander Zee's allegedly coerced resignation and because Vander Zee's FTCA claims are now ripe for adjudication. These arguments reflect a basic misapprehension of the district court's decision below. The district court held that collateral estoppel operated to bar *only* relitigation of Vander Zee's *Bivens* claims relating to the terms of the settlement agreement and addendum. That Vander Zee might now have further evidence on these points is no reason not to apply collateral estoppel. And, Vander Zee's arguments pertaining to the allegations concerning his resignation or the ripeness of his FTCA claims are irrelevant to the holding respecting the settlement agreement and addendum.

20

fairly litigated in a previous suit.

B.  Qualified Immunity[7]

The determination of whether a government official's actions are entitled to the protection of qualified immunity requires a two-part analysis:

> "First, the court must determine whether the plaintiff has alleged the violation of a clearly established constitutional right.  If the plaintiff fails this step, the defendant is entitled to qualified immunity.  If she is successful, the issue becomes the objective legal reasonableness of the defendant's conduct under the circumstances."  *Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996)(internal citations omitted).

*See also Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).  We determine that Vander Zee's claims against the individual defendants fail the first step of this analysis, and we affirm the district court's holding that the individual defendants are entitled to the protection of qualified immunity.

In *Vander Zee I*, we thoroughly analyzed Vander Zee's *Bivens* claims pertaining to the terms of the settlement agreement and

---

[7]    The court below additionally held that Mueller, Ederer, Frels, and Florio were entitled to absolute immunity in connection with Vander Zee's *Bivens* claims pertaining to his criminal prosecution.  *See, e.g., Graves v. Hampton*, 1 F.3d 315, 318 (5th Cir. 1993)(absolute immunity "applies to prosecutor's actions in initiating prosecution and in carrying the case through the judicial process").  The district court noted that Vander Zee conceded this issue below, and he does not contest it in his original brief to this Court.  While Vander Zee does raise the issue of absolute immunity in his reply brief, he does so only in a wholly conclusory and inadequate fashion.  "An appellant abandons all issues not raised and argued in its *initial* brief on appeal," *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir.), *cert. denied*, 115 S.Ct. 189 (1994). We affirm the district court on this point.

21

addendum and concluded that Vander Zee had failed to allege the violation of a clearly established constitutional right, therefore concluding that the individual defendants were entitled to the defense of qualified immunity. We find nothing to alter this analysis, and accordingly do not revisit this issue here.

Vander Zee additionally alleges in the present case that employees of the OCC acting in conjunction with employees of the Department of Justice coerced Stone Oak into demanding Vander Zee's resignation. As we previously noted, however, the Supreme Court in *Gaubert* has approved of the use of informal means by regulators to remove officers of financial institutions. *See Gaubert*, 111 S.Ct. at 1277. Indeed, the Court in *Gaubert* noted that the use of informal means by regulators to supervise financial institutions has a long history and has previously been approved by the courts. *Id*. at 1279. Vander Zee cites us to no contrary authority suggesting that the actions of the OCC employees in the present case in allegedly seeking his removal through informal channels violated his clearly established constitutional rights. Nor do we find that the fact that the OCC allegedly so acted as a result of requests by employees of the Department of Justice alters this result. Therefore, we affirm the district court's conclusion that the individual defendants were entitled to the defense of qualified immunity against Vander Zee's claims arising out of his allegedly

22

coerced resignation from Stone Oak.[8]

Finally, Vander Zee has not adequately challenged the district court's further holding that his *Bivens* claims were also barred by the applicable statute of limitations.[9]

## Conclusion

For the foregoing reasons, the district court's judgment dismissing all claims against the United States and the individual defendants is hereby

---

[8] Contrary to Vander Zee's contentions, our holding today is in no way inconsistent with our opinion in *Vander Zee I* on this point. In *Vander Zee I*, we noted that the district court had observed that "the district court noted in its order that had Vander Zee alleged that the defendants had coerced his termination from his position at Stone Oak he could have presented a claim which would withstand the qualified immunity defense." The individual defendants referred to in *Vander Zee I* were the Department of Justice attorneys, as the OCC employees had not been made parties to that action. Vander Zee does not allege in his present complaint that the United States Attorneys acting alone coerced his resignation, but that the OCC employees (who are parties to the present action) acting as a result of requests by these defendants made the demand on Stone Oak. As the power of financial regulators to use informal means to supervise financial institutions has been approved, Vander Zee's complaint fails to allege the violation of a clearly established constitutional right.

[9] Vander Zee's initial brief contains no argument with respect to the statute of limitations, and this point is therefore waived. *See, e.g., Cinel*, 15 F.3d at 1345. Vander Zee challenges the government's waiver argument in his reply brief by citing isolated references to the statute of limitations in his initial brief. However, an issue must be "briefed and *argued*" in the initial brief to avoid waiver. *Id.* Vander Zee's isolated references in his initial brief make no effort at cogent argument so as to avoid waiver.

23

AFFIRMED.[10]

---

[10]     All pending, undisposed of motions are denied.