**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-51036

GREGORY A. SCHRADER,

Plaintiff-Appellee,

versus

JOHN A. SANDOVAL, ETC., ET AL.,

Defendants,

JOHN A. SANDOVAL, in his Individual Capacity,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(A-97-CV-896-SS)

November 23, 1999

Before POLITZ, DeMOSS, and BENAVIDES, Circuit Judges.

POLITZ, Circuit Judge:[*]

Lieutenant John A. Sandoval appeals the district court's denial of the government's motion to substitute the United States as defendant in this action. Finding as a matter of law that Sandoval was acting within the scope of his employment when he allegedly performed a medical examination on a patient in an intentionally rough manner, we reverse the decision of the district court and remand for further proceedings consistent herewith.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## BACKGROUND

Gregory Schrader, an inmate at a federal prison in Bastrop, Texas, allegedly strained his hemorrhoids while lifting a heavy object in connection with assigned prison duties. He allegedly injured himself again a few days later while performing similar duties, and was sent to the prison clinic where he was examined by the defendant. Sandavol is employed by the Public Health Service as a Physician's Assistant in the Commissioned Officer Corps. His duties include treating inmates. Sandoval diagnosed Schrader with external hemorrhoids, assessed the situation as a non-emergency, and told Schrader to return the following morning for sick call.

Apparently believing he was suffering from something more serious, Schrader discussed the details of his examination with his supervisor upon returning to work. His supervisor suggested that Schrader discuss his situation with the Warden at an "open house" that was to take place during lunch that day. Schrader spoke with the Warden who said he would look into the matter. Later that day, Shrader was re-examined by Sandoval at the direction of the Warden. According to Schrader, during this examination defendant Sandoval, without warning, "rammed his finger into [Schrader's] rectum, bodily lifting [him] off the floor." When Schrader asked why he was being so rough, Schrader contends that Sandoval replied, "You shouldn't have gone to the Warden."

Schrader filed a **Bivens**[1] action naming Sandoval as defendant and alleging that Sandoval violated his eighth amendment right to be free from cruel and

[1] **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,** 403 U.S. 388 (1971).

unusual punishment by intentionally assaulting him during the second examination. Under the Public Health Service Act,[2] the government filed a Notice of Substitution certifying that at all relevant times Sandoval acted within the scope of his employment, and it sought to substitute the United States in place of Sandoval as the party defendant. Because certification by the Attorney General or her designee, here an assistant United States Attorney, is not conclusive on the issue, the district court conducted an evidentiary hearing. The district court found that Sandoval's actions were motivated by personal animosity towards Schrader because of Schrader's complaints to the Warden and denied the substitution.[3] Schrader timely appealed.

## ANALYSIS

We have jurisdiction to review the district court's order under the "collateral order" doctrine of 28 U.S.C. § 1291.[4] The denial of the motion to substitute the United States in place of Sandoval denied Sandoval's statutory immunity from suit. Thus, the order is appealable before final judgment, for "[t]he entitlement... is an immunity from suit rather than a mere defense to liability; and... it is effectively

---

[2]42 U.S.C. § 233.

[3]Sandoval categorically denies both intentionally inflicting pain upon Schrader and stating that his actions were in retaliation for plaintiff's complaint to the Warden. For purposes of the government's motion to substitute, however, the district court assumed the facts to be as Schrader alleged. Thus, for purposes of this appeal, we work from the same assumption.

[4]**Mitchell v. Forsyth,** 472 U.S. 511 (1985); **Rodriguez v. Sarabyn,** 129 F.3d 760 (5th Cir. 1997); **Mitchell v. Carlson,** 896 F.2d 128 (5th Cir. 1990) (citing **Cohen v. Beneficial Industrial Loan Corp.,** 337 U.S. 541 (1949)).

lost if a case is erroneously permitted to go to trial."[5] Further, immediate review is appropriate because our decision turns solely on a question of law. At the hearing, the district judge made no factual findings with respect to the allegations in the complaint but accepted as true Schrader's version of the facts for purposes of the government's motion. Our review, therefore, is limited to the legal consequences that flow from Schrader's allegations. It is well established that when an immunity defense turns upon an issue of law rather than on disputed facts, the denial of a motion to substitute is an appealable "final judgment" within the meaning of 28 U.S.C. § 1291.[6]

Section 233(a) of the Public Health Service Act[7] provides immunity from suit for a PHS employee who causes personal injury to a patient "resulting from the performance of medical, surgical... or related functions," provided that the employee was acting within the scope of his employment at the time of the incident causing such injury. Consequently, if the employee's actions occurred within the course of his duties, a plaintiff's sole remedy is to proceed against the United States

---

[5]**Mitchell v. Forsyth,** 472 U.S. at 526. **Rodriguez v. Sarabyn** (concluding that a denial of immunity under the Westfall Act is immediately appealable); **Mitchell v. Carlson** (same).

[6]**Behrens v. Pelletier,** 516 U.S. 299 (1996) (clarifying **Johnson v. Jones,** 515 U.S. 304 (1995), and reaffirming that a summary judgment denying a claim of qualified immunity is immediately appealable when the decision is based on an issue of law); **Meyer, et al. v. Austin Indep. Sch. Dist.,** 161 F.3d 271, 274 (5th Cir. 1998) (concluding that this court "can consider a claim... that the legal conclusion the district court drew was incorrect"); **Stem v. Ahearn,** 908 F.2d 1,3 (5th Cir. 1990) (recognizing that a denial of qualified immunity on summary judgment is immediately reviewable only when the defense "turns upon an issue of law and not of fact").

[7]42 U.S.C. § 233(a).

4

under the Federal Tort Claims Act. Unlike the Westfall Act,[8] which contains an exception to the FTCA for a federal employee's constitutional violations that cause personal injury to another,[9] section 233(a) provides that the FTCA shall be the exclusive remedy for *any* civil action that arises out of a PHS employee's conduct.[10] Thus, Schrader may not maintain a separate **Bivens** action against Sandoval in his individual capacity but, rather, must proceed under the FTCA as long as Sandoval was acting within the course of his employment when the alleged injury-causing conduct occurred.[11]

Scope of employment certification by the Attorney General is provided by 42 U.S.C. § 233(c). Like the analogous provision in the Westfall Act, once it is established that the employee was acting within the scope of his or her employment at the time of the alleged incident, the United States is to be substituted as the defendant. Certification by the Attorney General under the Westfall Act has been held to be non-binding and subject to judicial review.[12] Because we perceive no

---

[8]28 U.S.C. §§ 2671-2680 (1988).The official name of the Westfall Act is the Federal Employees Liability Reform and Tort Compensation Act of 1988.

[9]28 U.S.C. § 2679 (b)(2)(A).

[10]Section 233(a) specifically provides that the FTCA, "shall be exclusive of *any* other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim." 42 U.S.C. § 233(a) (emphasis added).

[11]**Carlson v. Green,** 446 U.S. 14 (1980) (noting that section 233(a) preempts a Bivens claim and that the FTCA is a plaintiff's sole remedy under that section).

[12]**Gutierrez de Martinez v. Lamagno,** 515 U.S. 417, 434 (1995) (holding that certification by the Attorney General, "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee.); **Garcia v. United States,** 62 F.3d 126 (5th Cir. 1995) (en banc); **Rodriguez v. Sarabyn**.

reason to distinguish between the immunity-conferring provisions of the two statutes, we conclude that certification by the Attorney General or her designee under 42 U.S.C. § 233(c) is likewise reviewable by this court and subject to the same principles of law as is scope certification under the Westfall Act.

We review *de novo* the question whether Sandoval was acting within the scope of his employment at the time of the alleged injury and apply the law of the state where his conduct occurred.[13]  Texas respondeat superior principles govern our analysis. Under Texas law, an employee's intentional tort is within the scope of his employment if the act is done, "(1) within the employee's general authority, (2) in furtherance of the employer's business, and (3) for the accomplishment of the objective for which the employee was employed."[14] Even intentional acts motivated by personal animosity towards the recipient can result in liability if the act was foreseeable given the nature of the employee's duties and is closely connected with the performance of another act by the employee that can be imputed to the employer.[15] Unquestionably, the performance of a rectal examination was within

[13]**Rodriguez,** 129 F.3d at 766; **Palmer v. Flaggman,** 93 F.3d 196 (5th Cir. 1996); **Williams v. United States,** 71 F.3d 502 (5th Cir. 1995); **Garcia,** 62 F.3d at 127.

[14]**Rodriguez,** 129 F.3d at 767 (citing **Robertson Tank Lines, Inc. v. Van Cleave,** 468 S.W.2d 354, 357 (Tex. 1971)); **Palmer,** 93 F.3d at 199; **Williams,** 71 F.3d at 506; **Texas & P. Ry. Co. v. Hagenloh,** 247 S.W.2d.236, 239-40 (Tex. 1952).

[15]**Rodriguez,** 129 F.3d at 767 ("An employer is liable for the foreseeable intentional and malicious acts of its employee done within the scope of employment, even if not authorized.") (citations omitted); **Williams,** 71 F.3d at 506 n.10 ("[A]n employee's willful and malicious actions made in the scope of his employment, or any acts which are so connected with and immediately grow out of another act of the employee imputable to the employer, are imputed to the employer...."); **Houston Transit Co. v. Felder,** 208 S.W.2d 880 (Tex. 1948) (stating the rule that when an employee's intentional harmful actions are so closely connected to the performance of a work-related duty, both acts are treated as one

Sandoval's general authority as a physician's assistant. The rectal examination was in furtherance of the Warden's business because the Warden specifically ordered Sandoval to re-examine Schrader and because the Warden is ultimately responsible for ensuring that prisoners receive medical treatment when necessary. Finally, the diagnosis and treatment of an inmate's medical conditions are among the purposes for which Sandoval is employed.

Despite the presence of these factors, the district court found that Sandoval had not acted within the scope of his employment at the time of the alleged incident. This finding appears to be based on Sandoval's testimony that none of his supervisors had ever given him permission to inflict pain upon a prisoner who complained to the Warden about his medical treatment. This conclusion, however, is contrary to our prior cases construing scope of employment in the federal immunity context, and contrary to Texas law determining employer liability under respondeat superior. Because Sandoval allegedly performed the examination in an unnecessarily rough manner does not take his actions outside the scope of his employment.[16] As a rectal examination is usually an uncomfortable experience, it is foreseeable that such an exam could be performed, on occasion, in a manner that inflicts pain upon the recipient. It is also foreseeable that Sandoval could have been agitated at having to perform a second examination at the Warden's behest. Even assuming that Sandoval intended to injure Schrader, inasmuch as the Warden

indivisible tort that may be imputed to the employer).

[16]**Durand v. Moore,** 879 S.W.2d 196 (Tex. App. 1994); **Houston Transit Co. v. Felder,** 208 S.W.2d 880 (Tex. 1948).

specifically requested the second examination, Sandoval's actions were the result of both his own and his employer's motives, thereby rendering his conduct within the scope of his employment.[17] Further, the precise way in which Schrader was allegedly injured could not be more closely connected with Sandoval's performance of his authorized duty as a physician's assistant to perform a medically necessary rectal exam of an inmate.[18]

We conclude and hold, therefore, assuming Sandoval intentionally injured Schrader while performing the second examination, that his actions were nonetheless within the scope of his employment, and that the government's substitution motion should have been granted.

The order of the district court is REVERSED, the motion to substitute the United States as defendant is GRANTED, and the matter is REMANDED for further proceedings consistent herewith.

---

[17]**Howard v. American Paper Stock Co.,** 523 S.W.2d 744, 747 (Tex. App. 1975) ("If the purpose of serving the master's business actuates the servant to any appreciable extent his acts are within the scope of the employment.").

[18]**Mackey v. U.P. Enterprises, Inc.,** 935 S.W.2d 446 (Tex. App. 1996) (finding that alleged sexually assaultive acts of fast-food restaurant managers were not closely connected to their employment-related duties to hold employer liable);**Houston Transit Co.,** 208 S.W.2d at 881 (concluding that bus driver's striking of motorist with money-change box during argument over motor vehicle accident was closely connected to his work-related duty to obtain motorist's information after accident occurred).