# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2024

Lyle W. Cayce
Clerk

No. 22-51050

John S. Malek,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-73

_____

Before Jones, Barksdale, and Elrod, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant John S. Malek appeals the district court's dismissal of his complaint for lack of jurisdiction under the Federal Tort Claims Act. Because the individually named defendants were acting within the scope of their employment when they made the allegedly defamatory statements, we hold that the United States properly substituted itself as the defendant. We AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-51050

I

This defamation suit arises out of workplace sexual harassment allegations made against then-Major John S. Malek of the United States Air Force by three United States Air Force employees.

Malek worked as Chief of Military Justice in a legal office at Joint Base San Antonio-Lackland. Air Force employee Lauryn Deering was a civilian attorney who worked with Malek. Captain Kara Iskenderian and Captain Morgan Hicks were commissioned officers in the Air Force Judge Advocate General's Corps (JAG Corps) who also worked with Malek.

In the fall of 2019, Iskenderian, Deering, and Hicks began accusing Malek of inappropriate behavior, including but not limited to, staring at Iskenderian and Deering's breasts and buttocks, asking inappropriate questions about their personal lives, and "tracking down" Iskenderian and lingering in her office. Deering and Iskenderian alleged that they were the subjects of Malek's inappropriate behavior, and Hicks stated that she witnessed Malek's behavior towards Iskenderian.

Malek asserts that the individually named defendants discussed their accusations against Malek in conversations with one another and other Air Force employees between November 2019 and April 2020. Specifically, Malek alleges that Iskenderian and Deering first defamed Malek to each other in November 2019 by discussing their concerns about Malek's behavior with one another. Then, on or around December 9, 2019, Malek alleges that Iskenderian reported her concerns to Lieutenant Aaron Allard (her supervisor), Colonel Lori Gill (a Staff Judge Advocate who also occupied a supervisory role), and numerous other employees. According to the government, Gill was initially dismissive of Iskenderian's allegations. Iskenderian then confided in others in the office about Malek's behavior and complained that leadership was not doing anything to address her concerns.

Nevertheless, Gill did follow up on Iskenderian's concerns by bringing in Master Sergeant Ashley Salmones to witness at least one of the conversations Gill had with Iskenderian.

In addition, the same week that Iskenderian reported her concerns to Gill, Air Force inspectors were conducting a Staff Assisted Visit of the office, during which someone else told them about Iskenderian's sexual harassment complaint. The record suggests that the inspectors then informed Gill of the allegations, communicating additional information that Iskenderian had not initially included in her conversations with Gill.

At that time, Gill had Malek removed from his position as Chief of Military Justice and reassigned to another position. Gill also initiated a Commander Directed Investigation into Malek's conduct. On December 30, 2019, the Air Force assigned Major Sarah Nazarechuk to complete the investigation. During the investigation, Iskenderian, Hicks, and Deering all allegedly repeated their allegations to Nazarechuk. Nazarechuk ultimately found Malek responsible for sexual harassment and "Conduct Unbecoming an Officer and Gentleman."

II

Malek sued Deering, Iskenderian, and Hicks for defamation, defamation *per se*, negligent misrepresentation, and intentional inflection of emotional distress in state court in Comal County, Texas.

The United States certified that the individually named defendants were acting within the scope of their federal employment with the Air Force at the time of the events alleged in Malek's complaint. Accordingly, the United States removed the case to federal court and substituted itself for the named defendants, as authorized by the Westfall Act. *See* 28 U.S.C. §§ 1442, 2679(d)(2).

No. 22-51050

After removal and substitution, the United States moved to dismiss the case for lack of jurisdiction.  The government alleged that Malek had failed to first submit an administrative claim to the Air Force, as required under the Federal Tort Claims Act.  In addition, the government argued that the doctrine of derivative jurisdiction deprived the federal court of jurisdiction because the state court lacked jurisdiction at the time of filing.

Malek did not dispute that the district court lacked jurisdiction over the United States.  Instead, Malek challenged the United States' certification that Deering, Iskenderian, and Hicks acted within the scope of their employment when they made the allegedly defamatory statements.  Malek requested discovery on the scope-of-employment issue.

The district court denied the government's motion to dismiss without prejudice and granted Malek's request for discovery.  The district court then opened limited discovery into the scope of employment issue.  At the close of discovery, the United States moved again to dismiss the suit because the district court lacked jurisdiction over Malek's claims.  The United States also asserted that claims based on events before December 31, 2019, were barred under Texas' one-year statute of limitations.  After requesting and receiving further briefing on the scope of employment issue, the district court dismissed Malek's complaint for lack of jurisdiction.

III

The issue before us is whether the United States correctly substituted itself as the defendant when it certified that the individually named defendants were acting within the scope of their employment when they made the allegedly defamatory statements.  We review whether a federal employee was acting within the scope of their employment under the Federal Tort Claims Act *de novo*.  *Williams v. United States*, 71 F.3d 502, 505 (5th Cir. 1995).  A plaintiff who challenges the government's certification that a

4

federal employee was acting within the scope of their employment must prove by a preponderance of the evidence that the employee's conduct was not within the scope of their employment. *Id.* at 506. We agree with the district court that Malek has not met this burden.

"[W]hether a particular federal employee was or was not acting within the scope of his employment is controlled by the law of the state in which the negligent or wrongful conduct occurred." *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995). Thus, we analyze whether Malek proved by a preponderance of the evidence that Deering, Iskenderian, and Hicks were not acting within the scope of their employment under Texas state law.

In Texas, an employee's act falls within the scope of employment if the act is done "(1) within the employee's general authority, (2) in furtherance of the employer's business, and (3) for the accomplishment of the objective for which the employee was employed." *Rodriguez v. Sarabyn*, 129 F.3d 760, 767 (5th Cir. 1997) (citing *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971)).

More specifically, for an employer to be liable for defamation by its employee in Texas, a defamatory statement must be: "(1) referable to a duty owed by the employee to the employer and (2) made while the employee is in the process of discharging that duty." *Id.* at 769 (citing *Texam Oil Corp. v. Poynor*, 436 S.W.2d 129, 130 (Tex. 1968)). When "an employee deviates from the performance of [their] duties for [their] own purposes, the employer is not responsible for what occurs during that deviation." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). To establish a deviation, an employee has to do more than "mentally turn[] aside" from his employer's business and must be outside of his actual duties of employment. *Rodriguez*, 129 F.3d at 769. Indeed, an employee's conduct falls within the scope of employment "even if the employee performs negligently or is

motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities." *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017).

The district court held that the alleged statements of the individually named defendants fall under the scope of their employment as Air Force employees because the Air Force Manual and Air Force Policy Directive "conclusively establish[] the individually-named [sic] defendants were acting within the scope of their employment when they participated in the Air Force investigation."

Although Malek argues that the employees' statements concerning his workplace conduct do not fall within the scope of employment because they were made "out of a personal vendetta," *Anderson v. United States*, 364 F. App'x. 920, 923 (5th Cir. 2010) (holding that an employee's statements concerning the workplace conduct of another employee are not within the scope of employment if they were made out of a personal vendetta), Malek has failed to present evidence of such a personal vendetta in this case. We AFFIRM.