Mike TOSTA and J. Gilbert Golson-El and Philadelphia City Monitor

v.

Benjamin HOOKS et al.

Civ. A. No. 83-3378.

United States District Court,
E.D. Pennsylvania.

Aug. 2, 1983.

618

Mike Tosta and J. Gilbert Golson-El, pro se.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiffs filed a pro se "constitutional complaint" consisting of 38 pages plus attached exhibits, alleging that numerous defendants, and various governmental and private officials acted individually and in combination to deprive plaintiffs of their civil rights.[1] Together with this complaint plaintiffs have filed a motion to proceed in forma pauperis. For the reasons which follow, plaintiffs' motion to proceed in forma pauperis is granted and the complaint is dismissed.

## COMPLAINT

Plaintiffs bring this action under the First, Fifth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983, 1985, and the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Two of the plaintiffs are adult individuals residing in Philadelphia and the third plaintiff is the Philadelphia City Monitor, a "newspaper" run by the individual plaintiffs. Plaintiffs' allegations are neither consistently clear nor cohesive but we will attempt to set them out in the following discussion as logically as a careful reading has enabled us to do.

Count I is on behalf of individual plaintiff J. Gilbert Golson-El. It appears that plaintiff alleges a chain of events has occurred to his detriment; the events began when plaintiff was denied his application for a minority business loan.[2] As a result of not receiving the loan, Mr. Golson-El asserts that he lost his rental properties through foreclosure which resulted in his bankruptcy. Plaintiff became eligible for welfare, was characterized as "transitionally needy" under the Public Welfare Code,[3] and as the plaintiff states, was unable to find a job. Plaintiff asserts that no jobs were made available to him because profits received by the state from a lottery game, "Lotto", were mismanaged and not properly applied to the development of a jobs program. Plaintiff also states that he has been sued in state Family Court for nonpayment of child support as a result of his not receiving welfare payments or having employment.

Plaintiff requests that an injunction be issued against the Family Court before which he was brought for nonpayment of child support. Plaintiff also requests relief "by judgment and order" and an award of damages generally against no named defendants based on their "unconstitutional discriminatory practices and citizenship vio-

1. The individual plaintiffs in the case *sub judice* recently filed a similar action against some of the same defendants in Civil Action No. 83–2922. This court denied plaintiffs' request to proceed in forma pauperis in a Memorandum Opinion and Order dated June 24, 1983, because of defects in their request.

2. The denial of plaintiff's application for a minority business loan appears to be the subject of a complaint filed in this district in Civil Action No. 80–2596. Judge Newcomer, in a Memorandum and Order dated June 15, 1981, concludes that Mr. Golson-El's application was considered on a nondiscriminatory basis by City officials, and that the application was rejected because of plaintiff's poor financial condition. Judge Newcomer's dismissal of plaintiff's complaint is res judicata in the case *sub judice* as to plaintiff's allegation of discrimination in the denial of the minority business loan.

3. Act 1982–75, 1982 Pa. Laws 231, amending the Act of June 13, 1967, P.L. 31, No. 21, known as the Public Welfare Code, 62 P.S. § 101 *et seq.* ("Act 75"). Section 10 of Act 75, amending 62 P.S. § 432, divides General Assistance recipients into two categories: the "chronically needy" and the "transitionally needy." Recipients within the latter category are authorized to receive benefits for no more than 90 days per year; they are required to register with the Department of Public Welfare for employment.

lations." (¶ 36, Complaint p. 14). In the alternative, plaintiff requests a declaratory judgment that the "Pennsylvania Lotto Games" are "discriminatory" and "unconstitutional on the basis of age and finances" and that the Pennsylvania welfare system is also "discriminating and unconstitutional on the basis of age and race." (¶ 36, Complaint, pp. 14–15).

Also under Count I of his complaint, plaintiff Golson-El requests reparation damages for racial discrimination practiced by all defendants except one, Par, Inc. Plaintiff requests these damages be awarded him as a "proclaimed Moorish-American" involuntarily made a citizen of the United States by Congressional legislation in 1862. Plaintiff contends that his involuntary citizenship deprived him of property rights of a preferred national identity and culture. (¶ 3, Complaint, p. 13). Plaintiff also asserts that his involuntary citizenship prevented his being able to leave the United States in violation of the Emancipation Proclamation, the 13th and 14th Amendments and the 1964 Civil Rights Act. (¶ 30, Complaint, pp. 12–13). Plaintiff contends he is being deprived of equal protection of the law when compared to reparation to be made to Japanese-Americans.

Count II of the complaint relates to events undergone by the co-plaintiff, Michael Tosta. Plaintiff claims that he was subjected to discriminatory practices in his employment which "expidited" [sic] his "loss of earnings and employment." (¶ 3, Complaint, p. 16). Plaintiff claims that the Pennsylvania Lotto Game program was mismanaged resulting in the profits not being available to subsidize a public jobs program presumably from which plaintiff Tosta might have benefited. Count II includes a claim for reparation for involuntary citizenship similar to the claim made by plaintiff Golson-El in Count I. Plaintiff requests damages against unspecified defendants "for unconstitutional discriminatory practices and citizenship violations." As in Count I, plaintiff seeks a declaratory judgment that the Pennsylvania Lotto games and welfare system discriminate on the basis of age.

Count III, on behalf of both individual plaintiffs, is a claim that Philadelphia City Council infringed the freedom of the press of the *Philadelphia City Monitor,* the "newspaper" run by the plaintiffs. The complaint charges that City Council did not permit plaintiffs to testify extensively in Council meetings which prevented them from inquiring into the cause of a budget deficit. Plaintiffs challenge the practices of City Council: plaintiffs complain that City Council is "disorganized" and the members not qualified (¶ 3, Complaint, p. 25). Plaintiffs complain about monetary authorizations by Council including a pay raise approved for Council members (¶ 6, Complaint, pp. 25–26). Plaintiffs seek an injunction to prevent City Council's operating without public participation which plaintiffs contend amounts to taxation without representation (¶ 10, Complaint, p. 27). Plaintiffs also request an order directing City Council to approve a question to be placed on the November election ballot.

As part of Count III, plaintiffs assert a claim against the *Philadelphia Daily News* complaining about the newspaper's alleged failure to report some items of interest to the plaintiffs. Plaintiffs charge the *Daily News* with discrimination which, by creating apathy among its readers, allegedly damaged plaintiffs' "newspaper." There is no necessity to further elaborate plaintiffs' claims against the *Daily News* on behalf of the "newspaper" since absent a showing of state involvement, plaintiff has no cause of action against the newspaper under § 1983, the Civil Rights Act of 1964 or the 14th Amendment. Also, plaintiffs' allegations of discrimination are insufficient to state a cause of action under § 1985 since the claims are unsupported by any specific facts and fail to demonstrate a denial of equal protection. *See, Robinson v. McCorkle,* 462 F.2d 111 (3d Cir.1972).

Count IV on behalf of both plaintiffs is a claim against Benjamin Hooks of the N.A.A.C.P. based on his alleged failure to respond to the requests made of him by the plaintiffs to help advance the issue of repa-

ration. Plaintiffs state that based on the purpose of the N.A.A.C.P. of promoting the interests of "color people" [sic], the refusal of the N.A.A.C.P. to represent plaintiffs' interest in the issue of reparation is misleading and deceptive to the people from whom the N.A.A.C.P. receives funds. Plaintiffs further claim that this refusal of the N.A.A.C.P. to take on plaintiffs' struggle for reparation makes the plaintiffs appear to be revolutionary in their continued attempt to obtain reparation.

## DISCUSSION

■ Initially we will dismiss the complaint as to all the defendants listed in the caption against whom the plaintiffs have not asserted any claim or alleged any personal involvement by them in the body of their complaint. *See, Weiner v. Bank of King of Prussia,* 358 F.Supp. 684 (E.D.Pa. 1973). We recognize that pro se complaints are to be held to less stringent standards than pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, absent any allegations of specific conduct by the defendants listed in the caption of the complaint, a "terse reference to a 'conspiracy' adds nothing ..." *Weiner,* 358 F.Supp. at 690. The defendants to be dismissed for lack of factual allegations asserted against them in plaintiffs' complaint are:

Walter Cohen—Secretary of Welfare

Leroy S. Zimmerman—Pennsylvania Attorney General

Edward S.G. Dennis, Jr.—U.S. Attorney General

Clarence Pendleton—Chair, Civil Rights Commission

Joan Berstein—Chair, Reparation Commission

L. White—"Supv."

B. Tatum—Chairman

Dr. N. Picione, Dir.

Par., Inc.

City Solicitor

Congressman William Gray

State Representative Dave Richardson

State Representative James R. Lloyd

## ALLEGATIONS AGAINST INDIVIDUAL DEFENDANTS

■ Plaintiffs name Richard Thornburgh, Governor of Pennsylvania, in Counts I and II of the complaint. In Count I, plaintiffs name Governor Thornburgh for his involvement in the recent enactment of the Pennsylvania welfare statute. Plaintiff challenges the welfare statute as violative of the 13th Amendment by "compelling pliantiff to apply for work ... causing in effect the state of Pennsylvania to become an employer of plaintiff without benefit of labor or union rights resulting in discriminatory injuries to plaintiff" (¶ 13, Complaint, p. 8). In Count II of the complaint, plaintiff J. Gilbert Golson-El states that he applied to Governor Thornburgh for a job to be paid through the Pennsylvania Lotto surplus and that his application was ignored.

■ It is clear that Governor Thornburgh has a qualified immunity in civil rights actions. *Thompson v. Burke,* 556 F.2d 231 (3d Cir.1977). Plaintiffs in the case *sub judice* complain of actions taken by the Governor in his official capacity: participation in enacting legislation and an alleged failure to reply to an application submitted by plaintiff to the defendant in his capacity as Governor. While the question of the qualified immunity of a state official is usually a matter for factual resolution, *see Scheuer v. Rhodes,* 416 U.S. 232, 242–43, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974), the issue can sometimes be decided by the court rather than the jury. *Reese v. Nelson,* 598 F.2d 822, 825 (3d Cir.1979). Absent any showing of bad faith or maliciousness directed towards the plaintiffs the complaint will be dismissed as to defendant Thornburgh.

■ Plaintiff Golson-El, in Count I, alleges constitutional violations in what he claims to be the nonapplication of Pennsylvania Lotto profits to a public jobs program. Plaintiff names Lynn R. Nelson, Executive Director of the Pennsylvania Lotto, as a defendant. Plaintiff lacks standing to challenge the appropriation or alleged misappropriation of state funds.

*See, Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Also, it is not clear that plaintiff has a personal stake in the outcome. *See, Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Accordingly, the complaint will be dismissed as to defendant Lynn R. Nelson.

Plaintiff claims that as a result of being denied a job created from the Lotto profits, he was haled into Family Court for nonpayment of child support. Listed as defendants in plaintiff's complaint are Judge Nicholas Cipriani of Family Court, Family Court in general, and the District Attorney. Absent any factual support for invidious, purposeful and intentional discrimination by these defendants, a conspiracy allegation cannot be sustained. *See, Robinson v. McCorkle,* 462 F.2d 111 (3d Cir.1972). Since plaintiff has stated no facts from which bad faith, maliciousness or even anything more than these defendants' performance of their ordinary duties can be even inferred, the defendants Judge Cipriani, Family Court and the District Attorney will be dismissed.

Also in Count I, plaintiff names defendants in connection with his application for a loan. Plaintiff states that he was rejected for a housing loan and was told he was unqualified though he insists in his complaint that he is qualified. The defendants whom plaintiff alleges to be responsible for rejecting his application for a loan include: David Valentine, G. Coleman, the City of Philadelphia, Jack Smyth and Darl Johns. Again, since plaintiff has failed to provide any facts in support of his conclusions that these defendants "discriminated" against him, the complaint will be dismissed as to these defendants.

Count II consists of claims by plaintiff Michael Tosta relating to the alleged loss of plaintiff's job when his employer, Par, Inc. incurred a deficit, according to

plaintiff. The complaint charges Mayor William Green with mismanagement of funds for Par, Inc. which plaintiff states is a city agency. Plaintiff states that the Mayor's misappropriation of funds caused plaintiff's "loss of . . . livlihood [sic] causing plaintiff mental distress and medical attention." (Complaint ¶ 9, p. 17). Even assuming arguendo that plaintiff's losing his job was due to the city's financial difficulties, plaintiff states no claim against Mayor Green which is cognizable by this court. Plaintiff lacks standing to sue. Also, this is not an appropriate issue for resolution by this court. Plaintiff's redress against an elected state official is via the election ballot and not in this court.

Plaintiff makes similar claims of mismanagement by the Philadelphia Department of Public Health and J. Brown, Director of Finance. Again, plaintiff lacks standing to sue these defendants for misappropriation of monies which he claims caused the deficit of his employer which allegedly caused plaintiff to lose his job. As is the claim against Mayor Green, this is not the type of particularized controversy appropriate for the judicial forum.

In Count III, plaintiffs complain of injuries to the "newspaper" which they claim to have founded. Plaintiffs charge that their freedom of inquiry was infringed when City Council limited the amount of time the plaintiffs were permitted to testify at a hearing.[4] We are unable to see how any rights of the plaintiffs were violated by the restriction. Plaintiff alleges that an entrenched system of corruption is present in City Council and names defendants Mayor Green and City Council members as being involved with this corruption which has infringed plaintiffs' "freedom of information." Absent any statement of actual involvement by the Mayor, Mayor Green will be dismissed as a defendant on the count of the complaint as well as on Count II, dis-

---

4. Although we accept plaintiffs' allegations as related in the complaint, we do note a contradiction between plaintiffs' claim that on behalf of the newspaper they were hindered in their inquiry into financial management of the City and the factual statement by plaintiffs that the plaintiffs were *giving* testimony to City Council rather than reporting or investigating the financial situation of the City.

cussed above. Absent any showing of a right violated by City Council's limiting the time plaintiffs were permitted to testify, the complaint will be dismissed as to both of these defendants, City Council President Joseph Coleman and Mayor Green.

Plaintiffs name several City Council members as defendants in the body of the complaint but since the plaintiffs have not listed them in the caption of the complaint, they are not considered defendants in this case. The only City Council member listed in the caption is Joseph Coleman. Since no factual allegations are made against Mr. Coleman in the body of the complaint, the claim against him is dismissed.

 Count III continues with a recantation that plaintiffs submitted information as to mismanagement of City Council to Gil Spencer of the newspaper, the *Philadelphia Daily News*. Plaintiffs allege that this newspaper denied citizens access to information relating to the city's management which caused citizen apathy. These defendants will be dismissed since (1) the newspaper has no duty to print information submitted by the plaintiffs, and (2) the plaintiffs have made no allegation that they suffered any harm more severe than disappointment over the newspaper's alleged refusal to honor plaintiffs' request that certain information referred to by plaintiffs be published.

■ Count IV is a claim against Benjamin Hooks of the N.A.A.C.P. for failing to advance the issue of reparation which plaintiffs seek. Plaintiffs seek reparation by the government for past discrimination against blacks. Plaintiffs state that they sought the support of the N.A.A.C.P. and that defendant Benjamin Hooks has not responded. Plaintiffs claim that the failure of the N.A.A.C.P. to help advance the issue of reparation amounts to misrepresentation of the organization's purpose of promoting the advancement of blacks. Plaintiffs state no legally cognizable cause of action against defendant Hooks; their injury can be characterized as no more than disappointment by a private organization which is not

grounds for redress under the Civil Rights statutes.

■ Plaintiffs made requests for leave to proceed in forma pauperis. The decision whether to allow a plaintiff to proceed in forma pauperis is based solely on financial considerations. *Sinwell v. Shapp,* 536 F.2d 15 (3d Cir.1975); *Brown v. Schneckloth,* 421 F.2d 1402 (9th Cir.1970), *cert. denied* 400 U.S. 847, 91 S.Ct. 95, 27 L.Ed.2d 85 (1970). Plaintiffs aver that they are unable to pay the costs for commencement of this action and have submitted affidavits to support this contention. Therefore we grant plaintiffs' requests for leave to proceed in forma pauperis.