Irene NEVAREZ

v.

UNITED STATES of America.

No. EP–95–CA–377–DB.

United States District Court,
W.D. Texas,
El Paso Division.

March 12, 1997.

Antonio Silva, El Paso, TX, for plaintiff.

Kurt Bohn, Special Assistant United States Attorney, El Paso, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction, filed on February 4, 1997, in the above-captioned cause. Plaintiff filed her Response Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction on February 18, 1997. On March 3, 1997, Defendant submitted a letter brief in reply to Plaintiff's Response to Defendant's Motion to Dismiss. After careful consideration of the pleadings and testimony from two evidentiary hearings,[1] the Court is of the opinion that the matter be resolved as set forth below.

### Procedural Background

On July 28, 1995, Plaintiff, Irene Nevarez ("Nevarez" or "Plaintiff") filed suit in state court against her co-workers, Selina Lee, Rebecca Morales, and Albertina Luna, alleging that they individually and/or collectively made defamatory statements about her. On September 1, 1995, the United States certified that these employees were acting within the course and scope of their employment at the time the statements were made. The United States then gave notice that it was substituting itself for the aforementioned individuals. Upon substitution of the individual Defendants by the United States, the state court lost jurisdiction over the cause. Therefore, on September 1, 1995, the Defendant, United States, gave its Notice of Removal to the United States District Court for the Western District of Texas, El Paso Division.

Defendant subsequently filed a Motion to Dismiss for failure to state a claim upon which relief can be granted on September 8, 1995, asserting that, because the United States was now the Defendant, the case would proceed under the Federal Tort Claims Act which does not apply to claims arising out of libel or slander. 28 U.S.C. § 2680(h). By way of response, Plaintiff challenged the U.S. Attorney's certification of the course and scope of employment as to the individual state court Defendants. On November 2, 1995, a hearing was held to determine the scope of employment issue. This Court entered an Order on November 6, 1995, rejecting the certification and substitut-

---

**1.** The first hearing to determine whether the Defendants were acting within the course and scope of their employment was held on November 6, 1995, the second hearing was held January 24, 1997.

ing the three individual Defendants for the United States.[2]

On January 24, 1997, on remand from the Fifth Circuit, this Court held another hearing to review the certification of scope of employment as to the individual Defendants.[3] Following the hearing, Defendant filed the instant Motion To Dismiss For Lack Of Subject Matter Jurisdiction asserting that such claims are preempted by the Civil Service Reform Act of 1978 ("CSRA" or the "Act").[4] Defendant additionally asserts that, pursuant to FED.R.CIV.P. 12(b)(6), Plaintiff's pleadings fail to state any claim upon which relief could be granted. Plaintiff responded to the Motion asserting that the individual Defendants were not acting within the scope of their employment when they made the alleged defamatory statements and that the CSRA does not cover the alleged misconduct perpetrated in this case. Plaintiff provided the Court with numerous affidavits of interested parties, as exhibits to their Response.

## Factual Background

Plaintiff broadly asserts in her Original Petition that, from February 1994 to March 1995, the three individually named Defendants engaged in a course of action of intentional defamation.[5] Specifically, Plaintiff alleges that the Defendants made statements which accused her of "having a sexual affair with her work supervisor, Pete Medina," and that such statements were "heard by the residents of the City of El Paso . . ." After a lengthy and tiresome study of testimony obtained through the hearings and evidence provided as exhibits to the various motions, the Court has been able to discern the following sordid facts about the case.[6]

Nevarez was originally employed at the Department of Public Works and Logistics ("DPWL") at Fort Bliss but was a victim of a reduction in force ("RIF") within the department in June 1992. As a result, Nevarez went to visit Pete Medina ("Medina") at the Equal Employment Opportunity ("EEO") Office on Fort Bliss to inquire about filing a complaint against the Directorate of Resource Management ("DRM") and Civilian Personnel Office ("CPO"). Medina formulated a solution to Nevarez's problem by having DRM fund Nevarez's position for one year while Medina trained Nevarez for a position within the EEO office. As such, Nevarez began employment training for the position of Complaint Manager—GS–9/11, within the EEO office in September of 1992.

At about the same time, Selina Lee filed an EEO complaint based on race and national origin discrimination for non-selection for promotion from GS–9 to GS–11, and was subsequently placed in the EEO office as a temporary employee in November 1992. In February of 1993, the results of the investigation into Ms. Lee's complaint revealed no discrimination and Ms. Lee was returned to her original duty station. In June of 1993, a negotiated settlement agreement was reached whereby Ms. Lee was transferred to the EEO office as an EEO Assistant—GS–7. It was during this period that there was a vacancy in the office for an EEO Specialist—

2. *Nevarez v. United States,* 903 F.Supp. 1094 (W.D.Tex.1995) *rev'd by Nevarez v. United States,* 95 F.3d 1149 (5th Cir.1996).

3. In an unpublished opinion, the Fifth Circuit held that, pursuant to *Williams v. United States,* 71 F.3d 502, 504 (5th Cir.1995), which was decided during the pendency of the appeal, the Court should have burdened the plaintiff with proving that the employees acted outside the scope of their employment. The Fifth Circuit therefore, reversed the substitution order, assumed that it did not have jurisdiction to review the remand order, and reversed and remanded the cause for further proceedings.

4. Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of Title 5 U.S.C.)

5. At times relevant to the matters involved in this litigation the Defendants were employed as follows:

Selina Lee—Equal Employment Opportunity Specialist with the EEO office.

Rebecca Morales—Personnel Staffing Assistant with the Directorate of Civilian Personnel ("DCP").

Albertina Luna—Special Emphasis Program Manager with the EEO office.

6. The Court notes that a substantial part of the factual basis detailed in this portion of the opinion was extracted from the testimony of Pete Medina taken during the July 27, 1994, interview with the Inspector General which was provided to the Court as an exhibit to Plaintiff's Response To Dismiss For Lack Of Subject Matter Jurisdiction.

GS–9/11. According to Ms. Lee, Medina provided Nevarez, and only Nevarez, with the opportunity to train for this GS–9/11 position even though Nevarez lacked EEO counseling experience and/or background. It was Nevarez's promotion and permanent placement into the Complaint Manager position which fueled the rumors of an affair between Medina and Nevarez.

In July 1994, the Inspector General ("IG") was directed to conduct an investigation to determine the facts and circumstances surrounding allegations of misconduct on the part of a Department of the Army civilian official assigned to Fort Bliss. The IG investigation continued through October 1994. Some of the allegations investigated by the IG which are pertinent to the case include the following:

\* \* \* \* \* \*

(b) That Mr. Medina and Ms. Irene C. Nevarez had an inappropriate relationship for personal gain and for promotion in violation of Executive Order # 12674, April 12, 1989, as amended by Executive Order # 12731, 19 Oct. 90, Section 101, paragraphs a. & m., Interim Change 4, AR 600–20, Army Command Policy, and Commanding General's Policy B–10, Subject: Sexual Harassment, dated 15 Oct. 92.

\* \* \* \* \* \*

(d) That Mr. Medina exercised unfair promotion practices by promoting Ms. Nevarez to GS–11 instead of Ms. Lee in violation of USAADACENFB Reg 690–9, Merit Promotion and Placement Plan.

During the January 24, 1997, hearing on the scope of employment issue, Plaintiff offered the testimony of several witnesses.[7] The testimony of the witnesses established the following:

1) All interested parties and witnesses were federal employees at the time of the alleged misconduct.

2) The alleged misconduct occurred on federal property at Fort Bliss.[8]

3) The alleged misconduct occurred during the work week of Monday through Friday and during the normal duty hours of 7:30 a.m. through 4:30 p.m.

4) The alleged misconduct of Rebecca Morales related to the processing of Nevarez's promotion.

5) The alleged misconduct of Albertina Luna occurred when she told Dorothy Bloechl that Nevarez and Medina were supposedly having an affair.

6) The alleged misconduct of Selina Lee occurred when she made comments about Nevarez to Nevarez.

In addition, the Defendant resubmitted the affidavits of the individual Defendants previously offered at the November 2, 1995, hearing. Specifically, the affidavit of Albertina Luna details that all the comments that Luna made about Nevarez were made either during her participation as a witness in the IG's investigation and the EEO investigation; during a discussion with Ms. Sambrano, the new EEO officer, conducted in her official capacity as one supervisor to another, or; to Ms. Bloechl, after she made repeated inquires into what "problems" existed in the EEO office. In her affidavit, Luna further specifies that during the investigations and during the "briefing" of Ms. Sambrano, Luna was Nevarez's supervisor.

### Rule 12(B)(1) Dismissal

Pursuant to Title 28 U.S.C. § 1331, a district court has original jurisdiction over a civil action which arises under the Constitution, laws, or treaties of the United States. However, should a defendant believe that jurisdiction does not properly lie with the district court, that defendant may raise such a defense and seek a dismissal of the action

---

7. Plaintiff's witnesses included:
 a) Esther Soto—Personnel Staffing Assistant
 b) Elizabeth St. John—Personnel Staffing Specialist
 c) Lucina Sebelia Kepp—Union President
 d) Dorothy Bloechl—EEO office temporary
 e) Irene Nevarez (Plaintiff)—Complaint Manager

8. Irene Nevarez testified that one incident occurred off post at a restaurant during a duty day luncheon, a birthday party for Medina, the supervisor of both Selina Lee and Nevarez at that time.

pursuant to FED.R.CIV.P. 12(b)(1), at any time.

The factual determinations decisive of a motion to dismiss for lack of jurisdiction are within the court's command and there exists no right to trial on such issues. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981). Before making a jurisdictional decision, however, the district court must look to the way the complaint is drafted to see if it is written so as to claim a right to recover under the Constitution and laws of the United States. *Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946). The court may base its decision on the undisputed facts in the record, the plaintiff's allegations, and its own resolution of disputed facts. *Williamson,* 645 F.2d at 416. As a general rule, the motion should be granted where the federal claim is clearly immaterial or insubstantial. *Id.*

### Rule 12(B)(6) Dismissal

A Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted may be filed by either party pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The purpose of such a motion under Rule 12(b)(6) is to test the legal sufficiency of the statement of the claim for relief, not the facts that support it. The requisites of a motion to dismiss are rigid and must be established to a certainty. *Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505, 506 (5th Cir.1971). Moreover, unlike a motion for more definite statement, a Rule 12(b)(6) motion to dismiss does not afford the district court "discretion in the usual sense." *Mitchell v. E–Z Way Towers, Inc.,* 269 F.2d 126, 130 (5th Cir.1959).

A Rule 12(b)(6) motion should not be used to contest the facts of a case. Accordingly, the provision must be read in conjunction with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 provides that a complaint filed in Federal Court should contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a). While the complaint need not set forth specific facts to support its general allegations, it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v.*

*Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Conley,* 355 U.S. at 47–48, 78 S.Ct. at 103.

When ruling on a Rule 12(b)(6) motion to dismiss, the District Court must first "accept all material allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." *Garrett v. Commonwealth Mortgage Corp. of Am.,* 938 F.2d 591, 593 (5th Cir.1991) (*citing Hernandez v. Maxwell,* 905 F.2d 94, 96 (5th Cir.1990)); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Next, in assessing the sufficiency of the complaint, the Court is directed to follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102; *See Garrett,* 938 F.2d at 593 (*citing Fee v. Herndon,* 900 F.2d 804, 807 (5th Cir.), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990)). In other words, the Court should not discharge the complaint unless there is no theory under which the plaintiff could prevail. *City of Fort Lauderdale v. East Coast Asphalt Corp.,* 329 F.2d 871, 872 (5th Cir.1964) *cert. denied,* 379 U.S. 900, 85 S.Ct. 187, 13 L.Ed.2d 175 (1965); *Madison v. Purdy,* 410 F.2d 99, 100 (5th Cir.1969).

In making its decision, the Court should not accept as true conclusory allegations within the plaintiff's complaint. *Kaiser,* 677 F.2d at 1050 (*citing Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974)). Even under liberal pleading standards, the absence of *any* factual allegations against a named defendant entitles that defendant to a Rule 12(b)(6) dismissal. *See Tosta v. Hooks,* 568 F.Supp. 616, 620 (E.D.Pa.1983). Further, if the complaint

shows relief is barred by an affirmative defense, the suit may be dismissed for failure to state a cause of action. *Kaiser,* 677 F.2d at 1050. Therefore, the definitive question to be asked when ruling on a motion to dismiss is whether, reviewing the allegations in the light most favorable to the plaintiff, and with every doubt resolved in his or her behalf, the complaint states any valid claim for relief. *Keating v. Shell Chem. Co.,* 610 F.2d 328, 332 (5th Cir.1980).

## Discussion

### Civil Service Reform Act ("CSRA")

■■■ Federal employees are generally precluded from bringing claims against the government when the claims arise "out of an employment relationship that is governed by comprehensive procedural and substantive provisions" which provide meaningful remedies against the United States. *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983). The Civil Service Reform Act affords such remedies to federal employees. The Act provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto,* 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988). The CSRA authorizes federal employees to challenge "prohibited personnel practices" by their supervisors. *See* 5 U.S.C. § 2302; *Saul v. United States,* 928 F.2d 829, 833 (9th Cir.1991) (employee had redress under CSRA for claims of defamation by supervisor). It is founded upon certain merit-system principles that govern civil service employment and provides that employees are to be treated fairly and equitably and "with proper regard for their privacy and constitutional rights." 5 U.S.C. 2301(b)(2).

In *Saul,* the Ninth Circuit held that the CSRA preempted Saul's common law tort claims, and therefore, the court lacked subject matter jurisdiction over those causes of action. *Saul,* 928 F.2d at 842–43. In that case, Saul sued his supervisors in state court for alleged constitutional and common law torts, asserting that his supervisors, among other things, defamed him and tortiously inflicted emotional distress upon him. *Id.* at 831. On appeal from summary judgment granted by the district court on remand, the Ninth Circuit concluded that "Congress intended to oust state tort law from the realm of federal employment" by leaving no room for state law remedies to operate. *Id.* at 842–43. The court went on to hold that "insofar as the CSRA offered Saul remedies, his state tort claims must be preempted to prevent them from conflicting with the remedial system that Congress prescribed for federal employees." *Id.*

■■■ Under the Act, prohibited personnel practices include the taking of any "personnel action" that violates its merit-system principles. 5 U.S.C. § 2302. Specifically, a prohibited personnel practice means any action that is described in subsection (b) of Section 2302. Subsection (b) states that "any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority," engage any of the prohibited acts listed in the subsection. 5 U.S.C. § 2302(b)(1)–(11). Therefore, an integral element of a "prohibited personnel practice" is the taking of "personnel action" which is defined to include certain actions such as, but not limited to, an appointment, a promotion, a disciplinary or corrective action, a detail, transfer or assignment, or a decision concerning pay, benefits, or education or training. 5 U.S.C. § 2302(a)(2)(A). Thus, essentially, where a plaintiff's claims arise out of his or her employment relationship with the federal government and all supervisory actions taken by the defendants are related to the plaintiff's status as a federal employee, the actions constitute personnel decisions under the CSRA, and are therefore exclusively remedied thereunder.[9] *Rollins,* 937 F.2d at 138.

■■ Here, the facts show that Plaintiff's claims arise out of her employment relation-

9. The remedies afforded by the Act include staying or correcting prohibited personnel practices and seeking disciplinary action against the offenders. *Rollins v. Marsh,* 937 F.2d 134, 137 (5th Cir.1991).

ships and are clearly related to her status as a federal employee. Testimony from the January 24, 1997, hearing revealed that, in February of 1994, Defendant Rebecca Morales, in her capacity as a Personnel Staffing Specialist, refused to sign off on promotion papers for Nevarez because Morales had heard negative things about Nevàrez including that Nevarez was sleeping with Medina. Testimony also revealed that Morales was known to have told various other federal employees that the only reason Nevarez did get the promotion was because Nevarez had an affair with Medina. In addition, the affidavit of Albertina Luna illustrates that Luna made comments about Nevarez to another supervisor in her "official capacity as one supervisor to another." Luna further informed Ms. Bloechl, an EEO office temporary, that the "problems" and "friction" in the office existed because Ms. Lee had filed an IG complaint against Medina alleging that Medina and Nevarez were having an affair.

Therefore, because of the authoritative and influential nature of Luna and Morales' positions, and the prejudicial nature of their conduct and statements, it is clear that Nevarez's cause of action against Luna and Morales falls squarely within the framework of the CSRA. Nevarez's complaint undoubtedly arises out of her employment relationships with Luna and Morales and the alleged misconduct of the Defendants is violative of the merit-system principles of the CSRA. Accordingly, Plaintiff's remedies for such alleged misconduct on the part of Luna and Morales lie within the Act, and the Court lacks jurisdiction over the cause of action.

■ Defendant United States urges that Plaintiff's claim against each of the individual Defendants falls under the CSRA, however, the Court declines to make such a finding as to Defendant Selina Lee. Much like the scenario in *Saul*, numerous cases interpreting and applying the provisions of the CSRA concern causes of action arising out of the removal, dismissal, or other employment actions executed by a supervisor or superior, *not a co-worker. See Greenlaw v. Garrett,* 59 F.3d 994 (9th Cir.1995) (state law claims for discrimination by supervisor are preempted by CSRA); *Petrini v. Howard,*

918 F.2d 1482 (10th Cir.1990) (CSRA preempts state law claims against former supervisors for unfavorable employment evaluations and interfering with prospective employment relationship); *Berrios v. Department of the Army,* 884 F.2d 28 (1st Cir.1989) (CSRA applies to state law defamation action brought by army civilian employee against the Army and his former supervisors).

Arguably, but for the fact that the parties in the instant case worked together, the alleged continuing course of conduct would not have ever occurred. However, this Court hesitates to massage the relationship between the Plaintiff and Selina Lee into a relationship entitled to CSRA coverage. In construing the provisions of the Act, the Court cannot hold that Lee ever had authority to take or recommend any "personnel actions" over Nevarez, as that term is defined in the CSRA. Therefore, any claim for relief made against Selina Lee does not fall under the Act and the Court retains its jurisdiction.

### Course and Scope of Employment

Having discussed the application of the CSRA, the Court next addresses the much debated issue of the case: whether the individual Defendants were acting within the course and scope of their employment such that the United States may be substituted as Defendant pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2).

■ It is now well settled law in this circuit that the Attorney General's certification of the scope of employment under the Westfall Act is subject to judicial review, and that the court's *de novo* review of scope of employment requires the application of the law of the state in which the employee's conduct occurred. *Garcia v. United States,* 62 F.3d 126, 127 (5th Cir.1995) (en banc). Furthermore, with the benefit of the court's opinion in *Williams,* this Court is now well apprised that the "burden of proof is on the plaintiff to show that the defendant's conduct was not within the scope of his or her employment." *Williams v. United States,* 71 F.3d 502, 506 (5th Cir.1995).

■ Texas law provides that a determination of scope of employment is applied

under the theory of respondeat superior; "employers may be held liable for negligent acts by their employees under a theory of respondeat superior only if the employee's actions are in the course and scope of their employment." *Williams*, 71 F.3d at 506 (*citing Mata v. Andrews Transport, Inc.*, 900 S.W.2d 363, 366 (Tex.App.—Houston 1995, no writ)). To conclude that the employee acted within the course and scope of their employment, the action of the employee must be:

(1) within the general authority given him;

(2) in furtherance of the employer's business; and

(3) for the accomplishment of the object for which the employee was employed.

*Id.* Furthermore, "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized," to be within the scope of employment. *Id.*

 Here, on September 1, 1995, the United States certified that the individual Defendants were acting within the course and scope of their employment at the time the alleged defamatory statements were made.[10] However, without the weight of the United States' certification as *prima facie* evidence of scope of employment, Nevarez must prove that the Defendant employees acted outside the scope of their employment. *Williams*, 71 F.3d at 506. The Court is of the opinion that Nevarez has failed to do so.

First, it is well established that, in all but one instance, each of the alleged defamatory statements complained of were made during working hours on Fort Bliss. It is further very well verified that the comments pertained to the promotion of Nevarez and her relationship with her supervisor, Medina. Finally, it is no secret that the IG's investigation conducted for four months in 1994 concerned this very relationship.

Given the official nature and purpose of the IG's investigation, it is indisputable that any and all comments made by the Defendants during the course of the investigation were made in the course and scope of their employment. The affidavits of the investigating officers, Capt. James Marshall and Capt. Karen Pike, disclose that comments made about Nevarez by the Defendants were made during the official scope of the IG investigation. The witnesses were asked numerous questions about their workplace relationships, work environment, and duties. Moreover, cooperation with an official investigation is a requirement of the Defendants' employment. Thus, participation in the investigation by the Defendants, and the making of statements therein, was certainly within the authority given to the Defendants, in furtherance of their employer's business, and for the accomplishment of the objectives of their employment.

Next, as the complaint specifically pertains to Selina Lee, the testimony reveals that Lee made comments concerning Nevarez and Medina having a special relationship and keeping incorrect time records as part of an effort to apparently stop the purported wrongdoings and preferential treatment that Lee perceived was occurring within the EEO office. Lee's allegations directly related to the parties' respective qualifications, performance of duties within the office, and opportunity for advancement. These allegations of unfair promotion practices and activities conducted for personal gain eventually matured and were the focus of the IG investigation. Thus, Lee's statements arguably fall within the general nature of her employment in the EEO office, as employees have the inherent authority to take actions in an effort to facilitate and accomplish the objectives of their employment. Consequently, the Court finds that Selina Lee was acting within the course and scope of her employment when making the statements about Nevarez.

Further, given the previous analysis of the Plaintiff's relationship with, and conduct of, Luna and Morales, it is apparent that the defamatory comments complained of were at least incidental to Luna and Morales' performance of their duties as supervisor and personnel staffing specialist, respectively. Thus, assuming *arguendo* that Court had jurisdiction over the claim asserted against Luna and Morales, the Court would find that the

---

10. The certification was filed with the Defendant's Notice of Substitution and Application for Order Thereon which was filed on September 1, 1995.

statements made by these Defendants were made within the course and scope of their employment.

Thus, having determined that Defendant Selina Lee was acting within the course and scope of her employment, the Court finds that the United States should be substituted for her, pursuant to 28 U.S.C. § 2679(d)(2). Consequently, with the United States as Defendant, the case proceeds as other suits under the Federal Tort Claims Act "subject to the limitations and exceptions applicable to actions." 28 U.S.C. § 2679(d)(4). The United States is thus "entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee ... as well as any other defenses to which the United States is entitled." 28 U.S.C. § 2674. Of particular importance, Section 2680 states that the provisions of the FTCA "shall not apply to ... (h) Any claim arising out of ... libel, slander ..." and, under such circumstances, a plaintiff's claims should be dismissed for lack of jurisdiction.

In *Aviles v. Lutz,* 887 F.2d 1046, 1049 (10th Cir.1989), the court upheld the district court's dismissal of the plaintiff's defamation suit because the allegation "that certain government employees defamed him falls squarely within the libel and slander exception" of Section 2680(h). Similarly, in *Hoesl v. United States,* 629 F.2d 586 (9th Cir.1980), the court affirmed the district court's dismissal of a defamation suit brought by a civil naval engineer against the United States because the United States is immune from libel and slander suits under 28 U.S.C. § 2860(h).

Therefore, applying Section 2860(h) to the instant case, the Court finds that Plaintiff's cause of action for defamation should be dismissed for lack of jurisdiction.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion To Dismiss pursuant to FED.R.CIV.P. 12(b)(1), as to Defendants Luna and Morales, is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion To Dismiss pursuant to FED. R.CIV.P. 12(b)(6), as to Defendant Lee, is **GRANTED.**

**IT IS FURTHER ORDERED** that all other motions presently pending in this cause, as of the date of this Order, are hereby rendered **MOOT.**

Finally, **IT IS ORDERED** that the above-captioned cause is **DISMISSED.**