**F I L E D**
**United States Court of Appeals
Tenth Circuit**

**AUG 26 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NOTAH BEN TAHY,

        Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

        Defendant-Appellee.

No. 98-4167
(D.C. No. 97-CV-55-S)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Notah Ben Tahy appeals from the district court's order dismissing his complaint brought pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). We affirm.

Tahy's amended complaint may be summarized as follows. He is a Native American, a member of the Navajo tribe. Until his termination on June 19, 1995, he was a special agent of the Federal Bureau of Investigation (FBI), operating out of its Blanding, Utah office.

In October 1992, Tahy wrote a memorandum to a supervisor in the Salt Lake City FBI office in which he accused a co-worker, Special Agent Trace L. Kirk, of consorting with criminals. Tahy alleges that after he sent the memo, Kirk told him that he had a lot of friends in the Salt Lake City office and elsewhere, and that they would "get" Tahy for turning Kirk in. Kirk was transferred to the FBI's Coeur d'Alene, Idaho office in 1994.

Tahy alleges that the individual defendants, friends of Kirk, joined in a conspiracy to take action to block Tahy's advancement in the FBI and ultimately, to obtain his termination from his position without cause. In furtherance of this conspiracy, FBI and Department of Justice employees allegedly

> fabricated allegations about sexual harassment, domestic abuse and theft of government funds, lied about the existence of evidence allegedly supporting those claims[,] provided false sworn statements, lied about the existence of, and refused to disclose the names of, alleged witnesse[s] against Tahy, propounded questions designed to

-2-

show a false deceptive result on polygraph tests, and otherwise deprived Tahy of both procedural and substantive due process of law.

Appellant's App. at 12. [1]

The FBI terminated Tahy's employment on June 19, 1995. His final administrative appeal of the termination was denied on September 15, 1995. In his district court complaint, he asserted the following claims: (1) a Bivens claim against the individual defendants for violation of his constitutional rights in connection with the termination and appeal process; (2) a claim for wrongful termination in violation of public policy against the FBI, Department of Justice (DOJ) and the United States; (3) a claim for intentional interference with his employment contract against the individual defendants; (4) a claim for breach of contract and breach of the implied covenant of good faith and fair dealing against the FBI, DOJ and the United States; (5) a claim for intentional infliction of emotional distress against the individual defendants; and (6) a claim for defamation against the individual defendants.

Tahy consented to dismissal of his contract claims, expressing his intention to refile them before the United States Court of Claims. The district court found that the remaining claims all were preempted by the Civil Service Reform Act of

---

[1]     Tahy also asserts that his supervisor, or someone in the Salt Lake City office, failed to forward his application for additional compensation for use of his Navajo language skills through the FBI's "Flip-Flap" program.

1978, Pub. L. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) (CSRA), and dismissed them. It further denied as futile Tahy's motion to amend his complaint to assert a claim under the Federal Tort Claims Act (FTCA).

We review the district court's dismissal of Tahy's complaint de novo. See Steele v. United States, 19 F.3d 531, 532 (10th Cir. 1994). We agree with the district court that the CSRA preempts his claims, and that it was proper to deny his motion to amend his complaint.

1. **Bivens claim**

The CSRA provides protection to federal employees "by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures – administrative and judicial – by which improper action may be redressed." Bush v. Lucas, 462 U.S. 367, 385 (1983). Given this broad scheme, the Supreme Court has refused to create a separate, Bivens remedy for federal employees who assert a violation of constitutional rights in connection with a personnel decision. See Bush, 462 U.S. at 388-90. Tahy acknowledges this limitation on Bivens actions, but contends his claim escapes preclusion for several reasons.

Tahy first argues that since he is not personally entitled to invoke CSRA protections, [2] this court should create a Bivens remedy to vindicate his rights. Our precedent is clear, however: we will not create a Bivens remedy in a federal employment action, even if the CSRA provides the employee with no remedy at all. See Lombardi v. SBA, 889 F.2d 959, 961 (10th Cir. 1989). Tahy presents us with no compelling reason to depart from this rule in his case. [3]

Tahy next argues that the CSRA does not preclude the creation of a Bivens remedy to address his claims against non-supervisory employees. He claims

---

[2] As an FBI agent, Tahy served in the excepted service. See 28 U.S.C. § 536. Although most excepted service employees are eligible to invoke the CSRA's procedures relating to prohibited personnel practices, the CSRA expressly exempts FBI excepted service employees from its protections. See 5 U.S.C. § 2302(a)(2)(C)(ii); see also id. § 7511(b)(8). Instead, the CSRA provides only a limited and specific protection to FBI agents who are subject to employment-based reprisals for whistleblowing. See 5 U.S.C. § 2303(a).

[3] Tahy does argue the venerable principle that there is no legal wrong without a legal remedy. See Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803). The Supreme Court has indicated, however, that the Marbury principle must be balanced against the countervailing principle that "the federal courts are courts of limited jurisdiction whose remedial powers do not extend beyond the granting of relief expressly authorized by Congress." Bush, 462 U.S. at 373. Noting that constitutional challenges to agency personnel action are fully cognizable within the CSRA system, id. at 385, the Bush Court denied a Bivens remedy because Congress is best situated to determine what remedies are available, see id. at 390. This is true even though the CSRA may not provide complete relief for a plaintiff whose rights have been violated. See id. at 388; see also Schweiker v. Chilicky, 487 U.S. 412, 425-29 (1988) (holding that where Congress has provided what it considers an adequate remedial mechanism for constitutional violations, the courts will not create a Bivens remedy).

co-workers in the FBI and DOJ violated his rights in furtherance of the conspiracy to "get him." Their actions allegedly included making false accusations of sexual harassment against Tahy, depriving him of information about where to send reimbursement for travel expense checks, suborning perjury concerning instructions Tahy was given about the checks, designing polygraph questions about the checks so as to produce a false deceptive result, manipulating Tahy's wife into making misleading allegations of domestic violence against him, misrepresenting Tahy's wife's medical records so as to show a history of domestic violence, and denying him various procedural rights in connection with the appeal of his termination.

Tahy's <u>Bivens</u> claim is more narrow than these factual allegations would suggest, however. His sole complaint is that he was deprived of due process in connection with his termination and the subsequent internal appeals process. <u>See</u> Appellant's App. at 20-21. Since Tahy's claim against non-supervisory employees relates exclusively to the effect of their actions on subsequent federal employment decisions against him, it would be inappropriate to circumvent the CSRA scheme by creating a <u>Bivens</u> remedy. <u>Cf. Lombardi</u>, 889 F.2d at 961 (declining to create <u>Bivens</u> remedy, even as to violations which occurred after termination of federal employment, where violations occurred only as a result of

employment relationship and plaintiff's position as a federal employee was central to his complaints).

Tahy next argues that when the FBI created its own appeals process, it subjected its employees to liability for constitutional violations through a <u>Bivens</u> action. We disagree. The CSRA's comprehensive administrative scheme provides a federal employee's exclusive avenue for redress of constitutional violations in the field of federal employment. <u>See</u> <u>Jones v. Tennessee Valley Auth.</u>, 948 F.2d 258, 264 (6th Cir. 1991). Tahy fails to show that any exception should be made to this rule simply because the alleged constitutional violations occur as part of an employer-created appeals process.

Finally, Tahy argues that "to the extent any actions of the individuals are based on race-based animus, plaintiff may state a <u>Bivens</u> claim against the individuals for race discrimination." Appellant's Br. at 25. This argument fails for several reasons. First, Tahy's complaint fails to state a <u>Bivens</u> claim based on racial discrimination. Second, notwithstanding Tahy's argument to the contrary, the CSRA precludes employment-based <u>Bivens</u> claims based on racial discrimination. <u>See</u> <u>Lee v. Hughes</u>, 145 F.3d 1272, 1274-76 (11th Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 1026 (1999). [4] Finally, Title VII precludes federal

---

[4] Tahy relies on <u>Davis v. Passman</u>, 442 U.S. 228 (1979), in which the Supreme Court permitted a <u>Bivens</u> remedy for workplace discrimination in the
(continued...)

employees from asserting a Bivens claim for employment discrimination. Cf. Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997) (holding Title VII preempts statutory causes of action for violation of constitutional rights based on employment discrimination), cert. denied, 118 S. Ct. 1569 (1998). [5] We conclude that the district court properly dismissed Tahy's Bivens claim.

## 2. State-law claims

Tahy argues that the CSRA does not preempt his state-law claims against the individual, non-supervisory defendants. These include his claims for intentional infliction of emotional distress and for defamation.

Our denial of a Bivens remedy for Tahy's employment-related claim against his co-workers rests to some degree on a discretionary exercise of judicial

---

[4](...continued)
case of a federal employee who was not protected by Title VII. In Lee, the Eleventh Circuit noted that Davis predates the Supreme Court's jurisprudence concerning the effect of the CSRA on Bivens remedies. See Lee, 145 F.3d at 1275-76. We agree with the Eleventh Circuit and do not consider Davis controlling here.

[5] Tahy contends that Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1975) permits him to assert a Bivens claim for racial discrimination. In Brown v. General Services Administration, 425 U.S. 820, 833 (1976), however, the Supreme Court explained that Johnson was based upon legislative history of the 1964 Civil Rights Act, which expressly permitted resort to other statutory remedies in addition to Title VII remedies. The 1972 amendments to the Act, which extended Title VII protections to federal employees, do not contain such legislative history. See id. Therefore, Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." Id. at 835.

restraint. Judicial restraint is not the issue where preemption of state common law claims is concerned, however. See Petrini v. Howard, 918 F.2d 1482, 1484 (10th Cir. 1990). The CSRA preempts only those state law tort actions which complain of activities specifically prohibited by the CSRA. See id. at 1485.

The CSRA offers an administrative remedy to federal employees who have been subjected to "prohibited personnel practices" by "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action." 5 U.S.C. § 2302(a)(1), (b). Given this definition, some courts have stated that the CSRA does not preempt state law tort claims against co-employees who do not have the authority to participate in personnel decisions. See, e.g., Nevarez v. United States, 957 F. Supp. 884, 890-91 (W.D. Texas 1997).

Tahy's state law claims are preempted, however, because they include supervisory defendants and target supervisory decisions. Tahy's claims are premised upon the existence of a broad-ranging conspiracy whose purpose was to cause him to lose his employment. He includes within the conspiracy Edward Leary, who recommended his termination. He also includes Thomas J. Coyle, who denied Tahy's appeal from the termination decision. He charges that both Leary and Coyle were active and knowing participants in the conspiracy.

The CSRA permits an employee whose employment has been terminated to seek an appeal with the Merit Systems Protection Board. See 5 U.S.C. § 7513(d).

The Board will reverse the decision if the employee can show harmful error in the agency's application of its procedures, that the decision was based on a prohibited personnel practice, or that the decision was not in accordance with law.    See id. § 7701(c)(2). [6]    Here, Tahy named defendants who had supervisory authority and complained of prohibited personnel practices taken by those defendants which violated the CSRA.    See id. §§ 2301(b)(8) ("[e]mployees should be– (A) protected against arbitrary action"); 2302(b)(12) (Supp. 1999) (forbidding supervisor to "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title").

Although invoking his rights under the CSRA in this fashion does not provide the employee with an action for damages against individual malefactors responsible for trumping up evidence or otherwise subverting the decisional process, the claim is nevertheless within the scope of the CSRA, which provides the employee's sole remedy.    See, e.g. , Saul v. United States , 928 F.2d 829, 841 (9th Cir. 1991) (holding Congress left no room for state tort remedies to operate

_____

[6]    Of course, as previously noted, Tahy cannot invoke CSRA's protections because of his status as an excepted service FBI agent.  This exclusion reflects a Congressional policy choice.  Complaints which are theoretically reviewable under CSRA cannot be said to fall outside the subject matter of CSRA's comprehensive scheme.

when it enacted the CSRA). We conclude that Tahy's state tort claims are within the scope of the CSRA and that the CSRA preempts them.

   3. **Motion for leave to amend**

   Tahy also appeals from the district court's order denying him leave to amend his complaint to state a claim under the Federal Tort Claims Act (FTCA). We review the district court's denial of a motion for leave to amend for abuse of discretion. See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999). Although Fed. R. Civ. P. 15(a) requires that leave to amend be given freely, that requirement does not apply where an amendment obviously would be futile. See Moody's Investor's Servs., Inc., 175 F.3d at 859. The district court correctly determined that the CSRA would preclude Tahy's proposed FTCA claims. It did not abuse its discretion in denying Tahy's motion to amend.

   The judgment of the United States District Court for the District of Utah is AFFIRMED.

                                        Entered for the Court


                                        Deanell R. Tacha
                                        Circuit Judge


-11-